(Reap. Dec. 9225)

ROSS PRODUCTS, INC. v. UNITED STATES

Entry No. 8326 #4, etc.

(Decided September 23, 1958)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys), for the defendant.

MOLLISON, Judge: These are appeals for reappraisement of various items of merchandise exported from Japan between February 25 and November 15, 1956. In each case, the invoice shows for each item a price in United States dollars per unit stated thereon to be "ex-factory." It appears that the "ex-factory" price represented the price of the merchandise in a packed condition at the factory of the manufacturer. At the foot of each invoice, there is a list of charges, claimed to have been incurred in bringing the merchandise from the factory in each case and placing the same on board of the exporting vessel (the so-called "inland" charges), and an item for buying commission calculated at 6½ per centum of the ex-factory price.

The parties have agreed that the proper basis of value for the merchandise involved was export value, which is defined in section 402 (d) of the Tariff Act of 1930.[1] The merchandise was appraised in each instance at the invoiced unit values (the so-called ex-factory prices),

---

[1] SEC. 402 (d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

plus the stated inland charges and plus the stated buying commission. The plaintiff claims that the correct value of the merchandise is the ex-factory prices.

It will be seen, therefore, that the difference between the values claimed by the parties is represented by the inland charges and buying commission which the importer deducted on entry from the total invoice value, and which were added back on appraisement by the appraiser.

The consular invoice in each case contains a declaration of one K. Hoshino, who identifies himself as a director of the Sanyu Trading Kabushiki Kaisha (hereinafter called "Sanyu") of Tokyo, Japan, that the latter firm was the shipper of the merchandise described on the invoice. It is the plaintiff's contention that Sanyu was the buying agent for the American importer and attended to the purchasing, inspection, and shipping of the involved merchandise from various manufacturers located on the outskirts of or at various distances from Tokyo. Under such contention, plaintiff relies upon the decision in the case of *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A. R. D. 71, relating to the status, as part of export value, of certain "export" charges (similar to the inland charges herein) and buying commissions.

It is the defendant's contention that, under the circumstances revealed by the evidence in this case, Sanyu was not an agent for the American importer but a principal which sold merchandise on its own account to the American importer and that the inland charges and buying commission were actually part of the price at which Sanyu sold the merchandise to the importer.

Plaintiff offered evidence in the form of the oral testimony of the vice president and buyer of the importing firm, certain affidavits, a copy of the contract between the importer and Sanyu, and the invoices attached to the entries relating to the importations at bar. Defendant's evidence consists of the report of a Treasury representative detailing the findings made by him upon an investigation conducted at Sanyu's establishment in Tokyo and at the places of business of some of Japanese manufacturers of merchandise such as that here involved.

Counsel for the defendant, in the brief filed in its behalf, states that the invoiced prices (i. e., the unit prices of the merchandise *per se* and the packing costs) were not in question (defendant's brief, p. 6). The situation with respect to the invoiced prices is the same in this case as it was in the *Brechner* case, *supra*, and therein described by the appellate division as follows:

It seems clear that the *per se* unit values were never in dispute. As invoiced, they were adopted by the importer; as invoiced, they were accepted and approved by the appraiser in his return. It is not to be supposed, because the appraiser

also included the export charges in the value which he found, that the *per se* invoice prices were not a separate element.

In that case, the court then said:

We are in agreement with the trial court that the rule of the *Fritzsche* and *Freedman & Slater* [*United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371, and *United States* v. *Freedman & Slater, Inc.*, 25 C. C. P. A. (Customs) 112, T. D. 49241] cases, *supra*, as approved in *United States* v. *Schroeder & Tremayne, Inc., et al.*, 41 C. C. P. A. (Customs) 243, C. A. D. 558, applies, and that appellees had the right to rely upon the presumption of correctness of the appraiser's return, with all of the findings inherent therein, with respect to all items not specifically challenged in this action.

So in the case at bar. From a consideration of the basis upon which the merchandise was invoiced, entered, and appraised, it is clear that there is no dispute but that the invoiced unit prices represent the price of the merchandise in a packed condition, ex-factory.

As has been indicated, the appraised values and the position taken by the defendant at the trial are based upon the view that Sanyu was a seller, and not a commissionaire, and offered the merchandise to the American importer on an f. o. b. port of exportation basis.

The effort of the plaintiff at the trial of the issue was directed toward establishing that Sanyu's function was that of buying commissionaire and agent for the American importer in the purchase of the merchandise from the Japanese manufacturers and its exportation from Japan.

According to the evidence offered by the plaintiff, the importer, in 1955, entered into an agreement with Sanyu providing that the latter was to act as buying agent for the former for which it was to receive a buying commission equal to 6½ per centum of the ex-factory price of merchandise purchases. Its duties were to include placement of orders, inspection of shipments, preparation of shipping documents, etc. Sanyu was to charge for inland freight, hauling and lighterage, storage, and other incidentals over the factory price.

The testimony and documentary evidence offered on behalf of the plaintiff indicate that the agreement was lived up to by both parties and establish a method of doing business under the agreement whereby the buyer of the plaintiff visited Japan twice yearly, discussed buying needs with Sanyu, and either visited the factories which produced the desired goods or had representatives of the factories come, for his conveniences, to his hotel. The factories, it appears, were generally small outfits, some of the household type, without means of handling paper work. A representative of Sanyu acted as interpreter during the meetings and attended to the matter of ordering the merchandise, picking it up on completion, inspecting the same, and arranging for its delivery to the exporting vessel.

The original quotations of prices by the manufacturers were always in Japanese currency. It was part of Sanyu's function to convert

that price into United States currency for the benefit of the buyer. The various charges incurred in the handling of the goods after pickup at the factory were in Japanese currency and were paid in that currency by Sanyu, which then collected in United States currency from the importer for such payments. The importer established a letter of credit in United States funds upon which Sanyu drew against shipping documents, and there is evidence that Sanyu was able to draw against the letter of credit to advance money to the manufacturers to enable them to buy raw material and pay labor to fill a specific order.

A considerable amount of the testimonial record is devoted to an attempt on the part of the defendant's counsel to establish by cross-examination of the plaintiff's buyer that the plaintiff was unable to substantiate that the amounts charged in the invoices for the specific items were precisely those which were paid by Sanyu to those who rendered the services charged for. Likewise, some portion of the report of the Treasury representative, defendant's exhibit A, is devoted to a report of inability to verify the accuracy of the inland charges.

In the view of the writer, these facts are immaterial to the issue, inasmuch as the appraiser, by accepting the charges as invoiced and including them in his return of value, found that they were the actual charges involved in connection with the values of the merchandise at bar. The *accuracy* of the charges has not been questioned by the plaintiff in this case; only the lawfulness of their inclusion in the value of the merchandise is at issue. If it is the contention of the defendant that the charges returned by the appraiser as part of the value of the merchandise were not the actual charges incurred, it was the burden of the defendant in the first instance to establish that fact.

The evidence offered by the defendant contained in the report of the Treasury representative not only fails to controvert that offered on behalf of the plaintiff, but in large part corroborates the same. Certain facts given in the report were obviously the basis upon which the appraiser decided that Sanyu had a proprietary interest in the sale of the merchandise, but these, in the light of the evidence offered by the plaintiff, are consistent with the buying commissionaire status of Sanyu.

Thus, while it appears from the report that the manufacturers considered that their sales were made to Sanyu, it seems clear that being small operators with very limited capital they would prefer to look to Sanyu, a local firm with an established reputation and known to them, for financing and payment, rather than to an American importer located thousands of miles away. The fact that Sanyu, both in financing and payment, used the money provided by the American importer, would, under the circumstances, be of no real interest to

them. So far as the actual fact is concerned, however, the overall picture, as shown by the evidence, establishes that Sanyu was an agent, and not a seller.

The writer is satisfied that the evidence shows that it was the practice of the manufacturers to offer their merchandise for sale at the factory, and that when the manufacturers came to any other place to deal with the plaintiff's buyer, it was for the convenience of the latter. The factories, therefore, were the principal markets for the offer of the goods for sale, and the prices at which they were offered were ex-factory, packed; the purchaser to be responsible for all expenses incurred thereafter.

A consideration of the entire record shows that in all material respects the situation with respect to the offer and sale of merchandise such as that at bar was the same as obtained in the *Brechner* case, *supra*, and that a like result is warranted.

Upon the entire record before me, I find as facts:

(1) That the merchandise at bar consists of various items of merchandise exported from Japan between February 25 and November 15, 1956.

(2) That at the time of exportation of the merchandise under appraisement, merchandise such as or similar thereto was not freely offered for sale for home consumption in Japan.

(3) That at the said time such merchandise was manufactured by various manufacturers located on the outskirts of or at various distances from Tokyo, Japan, and was offered for sale for exportation to the United States at the said factories, and that such factories were the principal markets in Japan in which such merchandise was so offered for sale.

(4) That at the said time the importer employed a commissionaire resident in Japan as purchasing agent, to whom a commission in the amount of 6½ per centum of the ex-factory, packed, price was paid.

(5) That at the said time the price at which such merchandise was freely offered for sale to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was the invoiced unit prices, which are the entered values.

I conclude as matters of law:

(1) That export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis of value for the merchandise involved herein, and

(2) That such value in each case is the entered value.

Judgment will issue accordingly.