(A.R.D. 116)

UNITED STATES *v.* KURT ORBAN COMPANY, INC.

Entry No. H–223.

Third Division, Appellate Term

(Decided February 11, 1960)

*George Cochran Doub,* Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the appellant.
*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the appellee.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: This is an application for review of a decision and judgment of Lawrence, J., holding that the export value, as defined in section 402(d) of the Tariff Act of 1930, is the proper basis for determining the value of the within merchandise, and that such value is the appraised value, less the amount shown on the invoice for cost of inland freight. *Kurt Orban Company, Inc.* v. *United States,* 42 Cust. Ct. 575, Reap. Dec. 9362.

The merchandise consists of 200 rolls of galvanized welded wire mesh imported from Western Germany and entered at the port of Port Everglades, Fla., on September 24, 1956. Entry was made at the invoice value c. & f. Port Everglades, less inland freight, less ocean freight. On appraisement, the deduction of the inland freight charges was disallowed.

It is not disputed that export value, as defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for determining the value of the merchandise, the only issue being whether or not the inland freight charges are part of such value.

In support of its contention that such charges are nondutiable, the importer introduced into evidence the affidavit of Ferdinand Breimeier, second manager of the wire department of Stahlunion-Export G.m.b.H. of Düsseldorf, Germany (plaintiff's collective exhibit 1). According to this affidavit, the business of Stahlunion-Export is the sale of various steel products, including galvanized wire mesh, for exportation to the United States and other countries, as agents of various steel mills in Western Germany. The affiant states that he was familiar with the prices at which the producers offered their merchandise and was familiar with the merchandise involved herein, which was produced by Baustahl-Gewebe, G.m.b.H. The affidavit continues:

* * * The merchandise was freely offered for sale and sold at the factory of the producer thereof, and the factory was the only market in Germany for the purchase and sale of such merchandise. The purchaser or his agent accepts delivery of the merchandise at the factory, and all charges arising thereafter are for the account of and are paid for by the purchaser. At times, for the convenience of the purchaser, I offer this merchandise and sell it on an fob seaport basis and these prices are determined by adding the inland freight and other charges (if any) to the ex-factory packed price. During the months of August and September 1956 galvanized wire mesh 6'' x 6'' x ASWG 10 x 10 in rolls 200 feet long and 5 feet wide was freely offered for sale and sold without any restrictions whatsoever for exportation to the United States at $16.07 per roll ex-factory, prepared for export, all charges included. The price of $18.60 per roll cif Port Everglades, Florida was determined by adding to the ex-factory price of $16.07, the actual cost of inland freight of $0.4728 per roll, the actual cost of ocean freight of $2.02 per roll and the cost of insurance of $0.0372 so that the amount received by the manufacturer was $16.07 per roll. I attach 2 offers of sale and sales of identical or commercially interchangeable galvanized wire mesh in rolls as corroboration of this statement.

In one of the offers attached to the affidavit, a price of $18.89 per roll c. & f. Los Angeles, duty unpaid, is quoted, and, in the other, a price of $18.60 per roll c. & f. Miami/Port Everglades, duty unpaid.

Defendant offered in evidence the commercial invoice (defendant's exhibit A) and the consular invoice (defendant's exhibit B). The former gives the following figures:

Value cif Port Everglades _____ 3, 720
less 0.2% for non-insurance _____ 7. 44

Value c&f Port Everglades _____ US $3, 712.56
Expenses included:
    Freight ex works to fob Antwerp_____ $94. 56
    Ocean freight from fob Antwerp to Port Everglades, Fla_____ $397.

$491. 56

The consular invoice contains the following:

| per roll | | | per roll |
|---|---|---|---|
| $18.60 | c&f | | cif $18.60 |
| less | Port | | less |
| 0.2% | Ever- | | insurance, |
| allow- | glades | | ocean |
| ance | $ | | freight |
| for non | | | $2.02 |
| insur- | | | $16.58 |
| ance | 3,712.56 | = | f.o.b. Antwerp |

It is well settled that where merchandise is offered for sale only at an f.o.b. price and never at an ex-factory price, inland freight charges are bound up in and form an integral part of the purchase price, and hence the dutiable value, of the merchandise. *Albert Mottola, an individual doing business under the name and style of Atlas Shipping Co.* v. *United States,* 46 C.C.P.A. (Customs) 17, C.A.D. 689; *United States* v. *Paul A. Straub & Co., Inc.,* 41 C.C.P.A. (Customs) 209, C.A.D. 553; *United States* v. *Zellerbach Paper Co.,* 28 C.C.P.A. (Customs) 303, C.A.D. 159. However, where the evidence establishes that the merchandise is freely offered for sale to all purchasers at ex-factory prices, charges added for inland freight are not a part of the dutiable value of the merchandise. *United States* v. *Dan Brechner, Jacob Brechner, Joseph Brechner, Herbert Brechner, a co-partnership doing business under the name and style of Dan Brechner & Co.,* 38 Cust. Ct. 719, A.R.D. 71, rehearing denied 39 Cust. Ct. 730, A.R.D. 79; *Dan Brechner & Company* v. *United States,* 40 Cust. Ct. 662, Reap. Dec. 9058; *Ross Products, Inc.* v. *United States,* 41 Cust. Ct. 550, Reap. Dec. 9225.

The issue before the court in the instant case is whether or not the evidence establishes, as contended by the importer, that this merchandise was freely offered and sold to all purchasers at an ex-factory price. The only evidence in support of this claim is the statement in the affidavit of Ferdinand Breimeier, quoted above. The attachments to the affidavit and defendant's exhibits A and B show c. & f. American seaport or f.o.b. Antwerp prices. Furthermore, an analysis of the figures on the commercial invoice (defendant's exhibit A) indicates

that the price paid and thus the amount received by the manufacturer, after the deductions claimed, was $16.1053 per roll, and not $16.07, as stated in the affidavit:

| Price per 200 rolls as per commercial invoice | | Price per roll |
|---|---|---|
| C & F Port Everglades | $3, 712. 56 | $18. 5628 |
| Less ocean freight | 397. 00 | 1. 985 |
| | $3, 315. 56 | $16. 5778 |
| Less freight ex works | 94. 56 | . 4725 |
| | $3, 221. 00 | $16. 1053 |

In *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495, it was held that an affiant's mere declaration of an essential ultimate fact in issue, unsupported by evidentiary facts, was not substantial evidence of the fact to be proved. In that case, the issue was the usual wholesale quantities in which the merchandise was freely offered to all purchasers. A statement in the affidavit that the great majority of sales were in a certain quantity was held insufficient.

In *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593, the affidavit stated that prices at which the merchandise was purchased were the prices at which certain sellers and others were freely offering such and similar merchandise in the usual wholesale quantities and in the ordinary course of trade for export to the United States and for home consumption in China. It was held that the affidavit, couched in the language of the statute, was insufficient.

Recently, in *United States* v. *Baar & Beards, Inc.*, 46 C.C.P.A. (Customs) 92, C.A.D. 705, an affidavit was presented containing the statement:

\* \* \* On April 16, 1953 silk scarves identical with those shipped were freely offered for sale and were sold to all persons in Tokyo, Yokohama and Kobe, the principal markets of Japan for the sale of such merchandise for exportation to the United States at $2.85 per dozen F.O.B. Yokohama, and the price did not vary by reason of the quantity purchased.

The court held that this statement, unsupported by any records or by any sales or offers to sell, did not constitute substantial evidence sufficient to overcome the presumption of correctness attaching to the appraiser's valuation.

The statement in the instant case is very similar to that involved in the *Baar & Beards, Inc.*, case. It is unsupported by any evidence of sales or offers to sell at the price and in the manner stated. Rather it is contradicted by other evidence in the record. In our view, it is insufficient to establish that the merchandise was freely offered for sale to all purchasers on an ex-factory basis at $16.07 per roll or at any other price. We are constrained, therefore, to disagree with the conclusion of the trial court that:

\* \* \* there is evidence that the galvanized welded wire mesh in rolls could be and was purchased at the invoiced and entered price less, in addition to the deductible charges allowed on appraisement, the cost of inland freight.

On the record presented, we find as facts:

1. That the merchandise consists of 200 rolls of galvanized welded wire mesh imported from Western Germany at the port of Port Everglades, Fla., on September 24, 1956.

2. That the merchandise was entered at the invoice value c. & f. Port Everglades, less inland freight, less ocean freight.

3. That appraisement was made at the entered value, plus inland freight.

4. That the evidence is insufficient to establish that this merchandise was freely offered for sale to all purchasers on an ex-factory basis at $16.07 per roll or at any other price.

5. That at or about the date of exportation such or similar merchandise was not freely offered for sale for home consumption in the country of exportation.

We conclude as matters of law:

1. That the export value, as that value is defined in section 402(d) of the Tariff Act of 1930, is the proper basis for determining the value of the within merchandise.

2. That the evidence is insufficient to overcome the presumption of correctness attaching to the appraiser's valuation of the merchandise.

3. That such export value is the appraised value.

Judgment will be rendered accordingly.