(A.R.D. 117)

UNITED STATES *v.* KURT ORBAN COMPANY, INC.

Entry Nos. 4317 ; 2731 ; 2954.

Third Division, Appellate Term

(Decided February 18, 1960)

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellant.

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the appellee.

764

DONLON, Judge: The defendant below has petitioned for review of the decision of the trial judge in three reappraisement appeals which were consolidated for trial.

The errors in the trial judge's decision which appellant alleges include (among others) the finding of an export value for imported merchandise different from the export value that was found by the appraiser. The trial judge found that there was no foreign value for any of this merchandise, and there is no allegation of error as to that finding. That finding is not before us for review, nor is the finding that the merchandise is dutiable on the basis of export value. The issue here is the amount of the export value.

The trial record shows that the imported merchandise consisted of steel plates of various sizes and some cooperage hoops, all the product of West Germany; that the merchandise was purchased by appellee (plaintiff below) from a manufacturers' agent, Stahlunion-Export, G.m.b.h., of Düsseldorf, Germany; that the merchandise was shipped from an undisclosed place to Rotterdam, Holland, for shipment to New Orleans.

The trial judge found that the principal market for the steel plates and cooperage hoops was "the factory," but there is nothing in the record to show where "the factory" was located. However, appellant does not allege any error in this finding, and it also is not before us for review.

Inasmuch as the ultimate issue is the amount of the export value of the several items of merchandise, and there is considerable variance between the values as invoiced, as entered, as appraised, and as found by the trial judge, it may be helpful to set forth here what the competing values are.

| Appeal No. | Merchandise | Invoice price per 1,000 kilos | Entered value per 1,000 kilos | Appraised value per metric ton, net | Trial judge's value |
|---|---|---|---|---|---|
| 254939–A | Steel plates in open hearth quality | | | | |
| | 120″ x 48″ x 10 USG | $75. 20 | $130. 00 | $171. 20 | $130.00, less inland freight of $2.50 |
| | 144″ x 48″ x 10 USG | $75. 80 | $130. 00 | $171. 90 | do |
| | 120″ x 60″ x 10 USG | $77. 30 | $130. 00 | $172. 90 | do |
| | 144″ x 60″ x 10 USG | $77. 90 | $130. 00 | $173. 60 | do |
| | 120″ x 48″ x 11 USG | $75. 20 | $130. 00 | $171. 20 | do |
| | 144″ x 48″ x 11 USG | $75. 80 | $130. 00 | $171. 90 | do |
| | 120″ x 60″ x 11 USG | $77. 30 | $130. 00 | $172. 90 | do |
| | 144″ x 60″ x 11 USG | $77. 90 | $130. 00 | $173. 60 | do |

| Appeal No. | Merchandise | Invoice price per 1,000 kilos | Entered value per 1,000 kilos | Appraised value per metric ton, net | Trial judge's value |
|---|---|---|---|---|---|
| 254940–A | Open hearth carbon steel plates | | | | |
| | 30′ x 72″ x 5⁄16″ | $82. 50 | $92. 50 | $99. 60 | $92.50, less inland freight of $2.50 |
| | 30′ x 84″ x 5⁄16″ | $82. 50 | $92. 50 | $104. 80 | do |
| 264583–A | Cooperage hoops | | | | |
| | 2″ x 17 BWG | $88. 80 | $88.80, less 1.5% commission | $88. 80 | $88.80, less inland freight of $3.00 |
| | Steel plates in open hearth quality | | | | |
| | 72″ x 204″ x 3⁄16″ | $82. 10 | $82.10, less 1.5% commission | $108. 00 | $82.10, less inland freight of $2.50 |
| | 67″ x 272″ x 1⁄4″ | $72. 80 | $72.80, less 1.5% commission | $99. 15 | $72.80, less inland freight of $2.50 |

In entering the merchandise of two of the three consolidated appeals (254939–A and 254940–A), plaintiff below added to invoice prices a sum to make market. In the third consolidated appeal, 264583–A, plaintiff did not add any sum to invoice prices to make market. In all three cases, the appraiser added a sum to make market for the steel plates, and in appeals 254939–A and 254940–A, such sums were in addition to the sums plaintiff had already added on the entries.

The cooperage hoops in appeal 264583–A were appraised at invoice price, which was $88.80 per metric ton, net. In the other two cases, appeals 254940–A and 264583–A, the invoices showed unit prices for the several items of merchandise and, separately, inland freight from an undisclosed place of shipment to the port city of Rotterdam. In appeal 254939–A, inland freight is not shown. In appeal 264583–A, the invoice shows an item of commission. It was deducted from invoice price, but was not allowed in appraisement, and no issue is raised as to it.

Appellant's 12 allegations of error attack, affirmatively or negatively, the findings of the trial judge as to the amount of the export value of the merchandise and attack also the probative and evidentiary value of the record made by appellee, calling for a judgment, on the proofs before us, appraising the several items of merchandise either "at unit prices disallowing deductions for inland freight, or at the appraised values in each case." (Allegation of error, No. 5.)

If the term "unit prices," as appellant uses it in the allegations of error, refers to invoice unit prices (and there seems to be no proof of record of other "unit prices"), then it appears that appellant is contending alternatively for values either at unit prices disallowing inland freight, or at appraised values. They are not the same. Whether or not appellant is prepared to abandon the additions to make market as a part of appraised value, and settle for invoice unit prices including inland freight, is far from clear. This argument is confusing, to say the least.

It will be noted that the appraised values are considerably higher than the entered values, and that, in his decision, the trial judge found values that are even lower than the values at which the merchandise was entered. Inasmuch as no error is alleged either as to the finding that the merchandise is to be appraised on the basis of export value or that the principal market for this merchandise was the "factory," it is our task, on review, to consider what the record shows as to what the export value of this merchandise was at the factory.

The record consists solely of an affidavit that was introduced by appellee (plaintiff below); the commercial and consular invoices in each case introduced by appellant (defendant below); and the oral testimony of a customs examiner introduced by appellant (defendant below), as foundation for a letter in evidence from Kurt Orban Co., Inc., to United States Appraisers Stores, 7th Division, 201 Varick Street, New York, New York, dated March 13, 1951 (exhibit A), and two Treasury Department forms, CF 6431, "Report of Appraising Officer" (collective exhibit B). Appellant's allegations of error challenge the probative value of the affidavit which appellee introduced, and insist that the evidence of record fails to overcome the presumption that the appraised values are correct.

There is no question that both the affidavit and the report are admissible. That this is so, points up the peculiar nature of court responsibility in appeals to reappraisement. Responsibility is not simply to resolve controversy, entering judgment for one or the other of the parties to litigation. In appeals to reappraisement, the court is to appraise the merchandise. To that end, Congress has provided that the court may consider several kinds of documentary evidence which usually would not be admissible in a litigation.

This is not to say that such evidence is entitled to the same weight that might be accorded to the testimony of a witness, whose knowledge of the subject and integrity the trial judge has opportunity to observe and assess and whom opposing counsel may cross-examine in an effort to develop pertinent facts.

We proceed, then, to consider what facts, bearing on export value at factory, are *proved* in the documents of record.

The affidavit of Mr. Wilhelm Deussen of Stahlunion-Export, G.m.b.h., in Düsseldorf, Germany, states relative to the offerings of such merchandise and the prices at which it was offered, as follows:

... The merchandise was freely offered for sale, and sold, at the factory of our supplying mill, the producer thereof, and the mill and several other competitive mills were the only market in Germany for the purchase and sale of such merchandise. The purchaser, or his agent, ordinarily accepts delivery of the merchandise at the factory, and all charges arising thereafter are for the account of, and are paid for, by the purchaser. At times, for the convenience of the purchaser, I offer this merchandise, and sell it, on an F.O.B. seaport basis, and these prices are determined by adding the inland freight and other charges (if any) to the ex-factory packed price.

On the respective dates of exportation of the merchandise listed below, the merchandise was freely offered for sale, and sold, as explained in the preceding paragraph, including any extra charges for width, length, thickness, or the like at the following F.O.B. seaport prices which included inland freight of $2.50 per metric ton for the steel plates and $3.00 per metric ton for the cooperage hoops, (all packing charges included).

There follows a schedule of f.o.b. packed prices, by consular invoice numbers. These prices are, as to some of the merchandise, in excess of invoice prices.

As Judge Johnson has pointed out in *United States* v. *Kurt Orban Company, Inc.*, 44 Cust. Ct. 759, A.R.D. 116, argued on the same day as this appeal, an affidavit statement in the statutory language, unsupported by records or by any sales or offers to sell, does not constitute substantial evidence sufficient to overcome the presumption of correctness attaching to the appraiser's valuation. That is the state of the record here.

As in the *Kurt Orban* appeal, *supra*, we are constrained to disagree with the conclusion of the trial judge that there was competent evidence introduced on behalf of plaintiff, from which it appears that—

... as to the steel plates in issue, the entered values thereof, exclusive of export charges, represent the statutory export value of said merchandise, and that, with regard to the cooperage hoops, said value is represented by the entered and appraised value, less the charge for inland freight.

On the record before us, we find as facts:

1. That the merchandise consists of steel plates and cooperage hoops, shipped from an undisclosed place to Rotterdam, Holland, for shipment to New Orleans.

2. That the merchandise of two of the appeals, 254939–A and 254940–A, was entered at various unit prices to which a sum was added to make market, and the merchandise of appeal 264583–A was entered at invoice prices, less 1.5 per centum commission.

3. That in all three appeals, the appraiser added a sum to make market for the steel plates, and, in appeals 254939–A and 254940–A, such sums were in addition to sums added by the importer on entry.

4. That, at the time of exportation, the price at which such or similar merchandise was freely offered for sale and sold for home consumption in the country of exportation was not higher than the prices for exportation to the United States.

5. That the evidence is insufficient to establish that the steel plates and cooperage hoops were freely offered for sale to all purchasers on an ex-factory basis at the entered values, less inland freight.

We conclude as a matter of law:

1. That export value, as that value is defined in section 402(d) of the Tariff Act of 1930, is the proper basis for determining the value of the within merchandise.

2. That the evidence is insufficient to overcome the presumption of correctness attaching to the appraiser's valuation of the merchandise.

3. That such export values are the appraised values.