(Reap. Dec. 10135)

ACME STEEL COMPANY *v.* UNITED STATES

Entry No. 18419.

(Decided January 3, 1962)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, and
*Samuel D. Spector*, trial attorneys), for the defendant.

MOLLISON, Judge: This is an appeal for reappraisement of values
returned by the appraiser on an importation of three sizes of steel
strapping, exported by the Acme Steel Company of Canada, Ltd.,
Toronto, Ontario, to the Acme Steel Company, Chicago, Ill., on or
about March 14, 1960.

The parties have agreed that such merchandise is not specified
on the final list (T.D. 54521), published by the Secretary of the
Treasury pursuant to section 6(a) of the Customs Simplification Act
of 1956 (T.D. 54165). Consequently, its valuation is governed by
the provisions of section 402 of the Tariff Act of 1930, as amended
by the said Customs Simplification Act.

The merchandise was entered at the invoiced prices, which were in Canadian dollars, packed, and was appraised on the basis of the constructed value, as defined in section 402(d) of the tariff act, as so amended. The appraisement was made in Canadian dollars at the entered unit values, plus 27.40 per centum, packed.

Plaintiff contends, first, that an export value, within the meaning of the definition in section 402(b) of the tariff act, as amended, existed for the merchandise, and that such value was the entered values. Alternatively, plaintiff agrees with the defendant that constructed value is the proper basis for the determination of the value of the merchandise, but contends that such value is the entered values.

The exporter is the wholly owned subsidiary of the importer. The exporter produced and sold merchandise such as or similar to that here in issue for home consumption in Canada, but, at the time of exportation of the involved merchandise, it sold such merchandise for exportation to the United States only to the importer, its parent company. At the said time, another Canadian firm produced and sold similar merchandise for home consumption in Canada, but did not sell for exportation to the United States, so that, at the pertinent time, the exporter was the sole firm engaged in the sale in Canada of merchandise such as or similar to that here in issue for exportation to the United States.

The record reveals that the mechanics of entry and appraisement proceeded in this manner: On entry, the importer deducted 30 per centum from the prices at which such merchandise was sold *for home consumption* in Canada, and entered the merchandise at the result of that action. Such entered prices corresponded to the invoiced prices. The 30 per centum deduction represented an allowance for expenses that were claimed not to be incurred in selling such merchandise for exportation to the United States, but which were incurred only in selling in the domestic market in Canada. It is contended that, in sales for exportation to the United States, there were no selling expenses (i.e., salaries and expenses of salesmen, etc.), distribution, warehousing, or advertising expenses. Furthermore, the home market prices were delivered prices, while the export price was f.o.b. Toronto, and the home market sales included free tool service repair, which was not given in the case of export sales.

On appraisement, the appraiser added 27.40 per centum of the invoiced and entered prices to such prices. Inasmuch as the parties have stipulated that the only item of constructed value in dispute is the item of general expenses under section 402(d)(2) of the amended tariff act, and that the 27.40 per centum of the invoiced values represents part of the difference between the home market price and the export price to the United States, it is clear that an allowance was made by the appraiser "for certain costs which would not accrue in

the normal course of trade in sales for export" (defendant's brief, p. 9). The nature of the said costs is not revealed in the record, but it is most likely that they covered the expense items of freight and tool repair service, which were specifically excluded from sales for export.

For the purposes of the amended tariff act, export value is defined as follows:

EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

The term "freely sold or, in the absence of sales, offered for sale" appearing in the definition of export value is defined, so far as pertinent to this issue, in section 402(f)(1) as follows:

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser * * *.

Both parties have proceeded along the line that the importer was a "selected purchaser," within the meaning of the foregoing definition, and the evidence shows that the sales for exportation to the United States were without restrictions as to the disposition or use of the merchandise by the purchaser, and that the prices did not vary by reason of the quantity purchased.

The dispute as to whether or not an export value for the merchandise, within the meaning of the amended tariff act, existed centers about the question of whether the export sales were "in the ordinary course of trade" and whether they were "at a price which fairly reflects the market value of the merchandise."

The term "in the ordinary course of trade" is defined in section 402 (f)(2) of the amended tariff act as follows:

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

The term, "price which fairly reflects the market value of the merchandise," is not further defined in the amended tariff act.

The parties differ in their view as to the meaning of these terms. For example, for the plaintiff, it is urged that the "trade under consideration" in the definition of "ordinary course of trade" in this case means the trade in selling steel strapping in Canada for exportation to the United States (plaintiff's brief, p. 13). On the other hand, the defendant contends that the term means the trade of selling steel strapping in Canada *for home consumption* as well as for exportation to the United States (defendant's brief, p. 7).

I am of the opinion that the plaintiff's view comports with the intent of the statute, and that the defendant's does not. One of the important purposes which was carried into effect by the passage of the Customs Simplification Act of 1956 was to eliminate foreign value, i.e., the value of goods in the foreign market when sold for home consumption, as a basis for valuing imported goods for duty purposes. See the general statement contained in Senate Report No. 2560, 84th Congress, second session, to accompany H.R. 6040, which became the Customs Simplification Act.

It would be strange if foreign value were eliminated as a basis for customs valuation and yet the incidents of foreign value, such as the ordinary course of trade of selling merchandise for home consumption, would be allowed to control or affect export value. Such a view, it seems to me, would negate the intention to eliminate foreign value as a method of valuation, and would certainly not *simplify* customs administration; it would *complicate* it. I, therefore, find that evidence as to conditions or practices obtaining in the trade of selling merchandise of the class or kind involved for home consumption in Canada is not probative of any fact necessary to a determination of whether such merchandise was or was not sold "in the ordinary course of trade" within the meaning of that term, as used and defined in the statute.

The record reveals, at least *prima facie*, that the only firm in Canada engaged in the trade of selling steel strapping for exportation to the United States was the exporter herein. Consequently, the conditions and practices under which it engaged in that trade are those which are to be scrutinized under the "ordinary course of trade" element of export value, and the only question to be determined is, what were the conditions and practices which were normal in that trade for a reasonable time prior to the exportation of the merchandise involved? The evidence shows that the merchandise at bar was sold under the same conditions and practices as had obtained without deviation for approximately 10 months prior to the present shipment. I, therefore, find that the price at which the merchandise at bar was sold was "in

the ordinary course of trade" within the meaning of that term, as used in the statute.

The next question is whether the price at which the merchandise was sold was one which fairly reflected the market value thereof within the meaning of that term, as used in section 402(f) (1) (B).

The plaintiff contends that it did, because the evidence shows that the transaction was an outright purchase and sale; that the selling price included all costs incurred in producing such merchandise for exportation to the United States, plus a profit such as was usually added in export transactions; and that the exporter would have been willing to sell to other purchasers in the United States at the same prices it sold the merchandise to the importer.

Plaintiff quotes from Webster's New International Dictionary, second edition, unabridged (1956), at page 911, the definition of "fair market value," as follows:

*Com.* The price which would induce a willing seller to sell and a willing buyer to buy.

While the plaintiff is no doubt willing to stand on the foregoing definition for the purposes of this case, it must be remembered that the price sought in connection with section 402(f) (1) (B) is *not* necessarily that which reflects the *fair market value* of the merchandise, but is that "which *fairly reflects* the market value of the merchandise." [Italics added.] The two phrases do not necessarily mean the same thing.

Defendant contends that any consideration of market value in connection with section 402(f) (1) (B) requires the inclusion of the market value for home consumption. Thus, it states in its brief:

* * * It is true that the Customs Simplification Act of 1956 eliminated foreign value as a basis of appraisement (except for items on the Final List) ; however, this fact cannot be considered as eliminating home market costs or sales from consideration in determining whether "a price . . . fairly reflects the market value of the merchandise" as required in Sec. 402(f) (1) (B). The above phrase is obviously restricted to the home market procedure, as the only remaining market.

This statement is not further developed. I am unable to see why costs or sales in the market for home consumption should be considered in connection with the determination of the market value of merchandise sold for exportation to the United States. The valuation policy of the amended tariff act is based upon export value.[1]

Why the costs and sales of merchandise for home consumption, which are admittedly different from those for exportation to the United States, should be taken into consideration in determining the market value or the price for exportation to the United States, when

---

[1] See Senate report referred to, *supra.*

the stated purpose of the statute was to eliminate such matters from valuation procedure, is not readily apparent to me.

It seems to me that the key term in section 402 (f) (1) (B) is "market value." See *United States* v. *Alfred Kohlberg*, 2 Cust. Ct. 849, Reap. Dec. 4526, affirmed in *Same* v. *Same*, 27 C.C.P.A. (Customs) 223, C.A.D. 88. In that case, the third division of this court said (p. 852) :

> Market value has been defined as the price at which the manufacturer holds his merchandise for sale, the price at which he freely offers it in the market, and the price which he is willing to receive, and the purchasers are willing to pay, in the ordinary course of trade. See *United States* v. *Sixteen Cases of Silk Ribbons*, 27 Fed. Cases 1099 * * *.

The record shows that the invoiced and entered prices are the prices at which the exporter held the merchandise for sale; that they were the prices at which it freely offered it, i.e., offered it without restriction as to use or disposition; and that they were the prices it was willing to receive for the merchandise in the ordinary course of trade. There being no proof offered to the contrary, they are the market value of the merchandise.

Defendant contends, however, that the record is devoid of evidence that some, any, or all of the expenses which were eliminated from the cost of production for the purpose of arriving at an export sales price were not such as would have been incurred by the exporter if it had sold to purchasers other than to its parent company. In my view, it is readily apparent that, in the sales for exportation to the United States, no selling, warehousing, distribution, advertising, freight, or tool repair service expenses arose. The sales were outright sales, f.o.b., Toronto. Since they were between a parent company and a subsidiary, it is obvious that there was no need for salesmen or their expenses; nor was there any need to advertise, for the parent company certainly knew what its subsidiary was producing and had available. Inasmuch as the sales were f.o.b., Toronto, there was no need for warehouses in the United States, nor did any freight costs or distribution expenses arise. Since tool repair service was not given in the case of export sales, it was not an expense of such sales.

Defendant evidently believes that a determination of value under the amended tariff act requires that offer or sale of such or similar merchandise be made to others than the purchaser of the merchandise under appraisement. I find no such requirement in the valuation provisions of the amended tariff act. On the contrary, the provisions of the amended act make plain that for the purpose of determining value the transaction involved in the importation under appraisement, transactions between sellers and selected purchasers, and even transactions between related persons, may be considered.

The fact that the seller and purchaser are related is no bar to a finding of export value under section 402(b). *Chr. Bjelland & Co., Inc.* v. *United States*, 45 Cust. Ct. 435, 443, Reap. Dec. 9753. Nor does the fact that the merchandise at bar was purchased by a parent company from its subsidiary company create the presumption that the merchandise was sold at a price which did not reflect its market value, or that it was sold under circumstances outside the terms and conditions laid down in the export value definition.

Simply stated, the facts of record show that the market in Canada for the sale for exportation to the United States of merchandise such as or similar to that here involved consisted solely of the sales made by the present exporter, and that its prices and the circumstances under which it sold such merchandise to the importer were within the purview of the export value definition in the amended tariff act.

I, therefore, find as facts:

(1) That the merchandise involved in the instant appeal for reappraisement consists of steel strapping, exported from Canada on or about March 14, 1960.

(2) That said merchandise was appraised on the basis of constructed value, as defined in section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

(3) That the invoiced and entered values represent the Canadian home consumption prices of said merchandise, less 30 per centum for various expenses incurred in the Canadian market, such as selling, distribution, warehousing, advertising, freight, and tool repair service, which expenses are not incurred in selling said merchandise to the United States.

(4) That said merchandise was appraised at the entered unit values, plus 27.40 per centum, representing part of the difference between the Canadian home consumption price and the export price to the United States.

(5) That said merchandise does not appear on the final list, promulgated by the Secretary of the Treasury in T.D. 54521.

(6) That said merchandise was produced and exported by Acme Steel Company of Canada, Ltd., Toronto, Ontario, and there was no other Canadian exporter of merchandise of the same class or kind during the period in question.

(7) That, during the period in question, said merchandise was sold in the ordinary course of trade to Acme Steel Company, Chicago, a purchaser at wholesale, without restrictions as to the disposition or use of the merchandise by the purchaser.

(8) That, during the period in question, the merchandise was not sold for exportation to the United States at different prices for different quantities.

(9)   That the invoiced and entered prices fairly reflect the market value of the merchandise for any quantity exported to the United States during the period in question.

(10)   That, at the time of exportation to the United States, the invoiced and entered prices were the prices at which such merchandise was freely sold in the principal market of Canada, i.e., Toronto, Ontario, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

I conclude as matters of law:

(1)   That export value, as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise covered by the instant appeal for reappraisement, and

(2)   That such value is the invoiced and entered values.

Judgment will issue accordingly.