UNITED STATES v. ACME STEEL COMPANY (No. 5145)*

*C.A.D. 841.

United States Court of Customs and Patent Appeals, May 14, 1964

*John W. Douglas*, Assistant Attorney General, *Alan S. Rosenthal, David J. McCarthy, Jr., Harvey L. Zuckman*, for the United States.

*Barnes, Richardson & Colburn (Joseph Schwartz*, of counsel) for appellee.

[Oral argument April 6, 1964, by Mr. Zuckman and Mr. Schwartz]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Associate Judges

ALMOND, Judge, delivered the opinion of the court:

The United States appeals from a judgment of the United States Customs Court, Second Division, Appellate Term,[1] affirming

---

[1] *United States* v. *Acme Steel Company*, 50 Cust. Ct. 529, A.R.D. 152.

the decision of the trial court [2] sustaining the invoiced and entered values of an importation of steel strapping from Canada. The merchandise in issue was appraised at the entered unit values, plus 27.40 per centum Canadian dollars, packed, upon the basis of constructed value as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, section 2(a), 70 Stat. 943, 19 U.S.C. 1401a(d). The Customs Court held that export value, as defined in section 402(b) of the Tariff Act of 1930 as amended by the Customs Simplification Act of 1956, section 2(a), 70 Stat. 943, 19 U.S.C. 1401a(b), was the proper basis for the determination of the value of the merchandise and that such values are the entered values.

The statutory definitions of the values in issue read as follows:

[SEC. 402] (b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

[SEC. 402] (d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

---

[2] *Acme Steel Company* v. *United States,* 48 Cust. Ct. 497, Reap. Dec. 10135.

without restrictions as to the disposition or use of the merchandise by the purchaser, except * * *.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or * * *.

The issue here is whether the importer appellee (hereinafter Acme Chicago) sustained its twofold burden of establishing that the appraiser's valuation was erroneous and that the basis of dutiable value should be, not constructed value as determined, but export value as claimed.

In resolving this issue, we must be guided by ▮▮▮ the well established rule so succinctly reaffirmed and stated by this court in *United States* v. *North American Asbestos Corp.*, 48 CCPA 153, 155, C.A.D. 783:

This being a reappraisement case, the only question before us is whether, as a matter of law, there is any "substantial evidence" to support the judgment below. It is not our province to weigh the evidence.

The parties stipulated that the merchandise in issue does not appear on the final list, published by the Secretary of the Treasury pursuant to section 6(a) of the Customs Simplification Act of 1956; that the basis of the appraised value was, in fact, constructed value; that the only item of such value in dispute was that of general expenses, as defined in said section 402(d)2; that the appraised value at the entered unit values, plus 27.40 per centum, represents part of the difference between the home market price and the export price to the United States; and that there was no other Canadian exporter of merchandise of the same general class or kind during the period covered by the instant importation.

An analysis of the evidence of record submitted by appellee discloses, in material substance, the following factual situation: Two witnesses testified on behalf of appellee. They were not cross-examined. The appellant introduced no testimony. William J. Nesbit, office manager of appellee, Acme Steel Company of Canada, Ltd. (hereinafter Acme Canada), responsible for accounting and stock control procedures, with supervision of all administrative matters, responsible for cost calculations and consultant with the sales department in formulating selling prices, testified as to the cost of production and sizes of the importation in question. He testified that the cost of

production per 100 pounds was arrived at on the basis of the following items:

| | Sizes | | |
|---|---|---|---|
| | ⅜ x 15 | ⅝ x 20 | ¾ x 20 |
| Material | $ 7.58 | $ 7.16 | $ 7.19 |
| Labor | .31 | .17 | .19 |
| General expenses: | | | |
| Administrative cost of accounting, traffic and engineering | .30 | .30 | .30 |
| Paint and lead and wax | .21 | .21 | .21 |
| Fixed factory overhead | .70 | .70 | .70 |
| Coverings, containers, packing, etc. | .29 | .29 | .29 |
| Profit | 4.07 | 3.99 | 3.84 |
| (Canadian) | $13.46 | $12.82 | $12.72 |

He further testified that the cost of labor included cost of fabrication and other processing to produce the merchandise at the time preceding the date of exportation which would ordinarily permit production in the ordinary course of business, which is three days to a week; that these expenses were in connection with producing and selling the merchandise to the United States; that the cost of coverings, containers, packing, etc., includes all other expenses incidental to placing the merchandise in condition for shipment to the United States; that the fixed factory overhead includes taxes, insurance, power, and supervision of salaried employees, other than direct labor; that these items of general expense and profit were the amounts reflected by Acme Canada in producing merchandise of this same general class or character in the ordinary course of trade for shipment to the United States during the first three months of 1960; that these were the normal general expenses, overhead and profit in selling such merchandise for exportation to the United States; that in so selling this class of merchandise Acme Canada did not have different prices for different quantities of the same items; that the transaction under consideration was an outright sale from exporter to importer; that the selling price represented the Canadian domestic price in carload lots less 30 per cent and that this price included cost, general expenses and profit usually added in sales for exportation to the United States.

The witness testified that the reason for deducting 30 per cent from the home consumption price was to allow for expenses incurred in selling in the Canadian market, such as selling, warehousing, advertising, freight and tool repair service; that such expenses were incurred because in Canada sales were direct to users and that none of these various expenses were incurred in connection with shipments to the United States.

The witness explained that in Canada appellee has "delivered prices," which meant absorption of freight to the point of delivery,

whereas in selling to the United States the price is f.o.b. Toronto with the purchaser paying the freight.

The record discloses that Acme Canada is a wholly-owned subsidiary of Acme Chicago and that the latter is a producer of hot and cold rolled and strip steel strapping and acts as a distributor of steel strapping; that there is one other Canadian manufacturer of similar steel strapping, not the coated type such as the instant strapping; that it is not sold in the United States, and that Acme Chicago was the only distributor in the United States for Acme Canada.

The witness further testified that based upon his experience and knowledge of the business the invoice prices in question fairly reflected the market value for shipment to the United States. He stated that:

* * * I say that for the savings that were effected, that there was no selling expense, there was no distributing expense, there was no warehousing, there was no freight, advertising, travel and entertainment didn't apply, warehouse, and maintenance cost on the strapping steel repair, which is the service as I mentioned previously, which is given free to our customers who want to use it, of this strapping.

The witness stated that these savings were effected in shipping to the United States; that Acme Canada would have been willing to sell to other distributors in the United States at the same prices as sold to Acme Chicago and that the sale in the present case was not with any restrictions as to the disposition or use of the merchandise by the purchaser.

A list of all of Acme Canada's sales for exportation to the United States during the first three months of 1960 was received in evidence.

The witness, Benjamin Gelgoot, Vice-president of sales for Acme Canada and responsible for the pricing, selling and marketing of its products, testified that he is familiar with the instant products sold by his company and familiar with the competition in the steel strapping business; that there is only one other company in Canada which produces steel strapping; that he is familiar with its product and with the class of trade to whom it sells steel strapping which is substantially the same as the strapping in question except that it is unpainted whereas Acme Canada's strapping is painted and that as far as he knows the other company does not export to the United States.

The trial judge, as did the Appellate Term, noted that the 27.40 per centum of the invoiced and entered prices added by the appraiser represents, by stipulation, part of the difference between the home market price and the export price to the United States and that the record did not specifically show which, if any, of the expenses incurred in the home market sales were considered inapplicable and not included in the appraised value. The record is clear that freight and tool repair service were not involved in sales for exportation to the

United States. We agree with the Customs Court that the record supports the inference drawn by the trial judge that the partial allowance of 2.60 per centum was reasonably attributable to the expense items of freight and tool repair service. Assuming, arguendo, that appellee made out a prima facie case that no part of the 30 percent was chargeable to export value, it would then be incumbent upon the appellant to support the appraiser's action in allowing only 2.60 percent of the difference.

█ The primary basis of value of imported merchandise established by section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is export value. If such value cannot be satisfactorily determined, then resort must be had to United States value. Resort may be had to constructed value only in the event that neither export value nor the United States value can be satisfactorily determined. If export value can be satisfactorily determined, no other basis of value may properly be considered. The finding of constructed value by the appraiser herein of necessity implies, in view of section 402, that no other basis of value can be satisfactorily determined. █ The appraiser's finding carries with it a presumption of correctness imposing on appellee the two-fold burden of proving error on the part of the appraiser and in addition thereto pointing out the provision of law under which the merchandise in issue is properly dutiable. As stated by the Customs Court, the parties having stipulated that the only item in dispute in the appraiser's finding of constructed value is the item of general expenses, as defined in section 402 (d) (2), supra, the issues are thus confined to whether appellee established an export value within the purview of section 402 (b), supra, or, alternatively, whether or not the general expenses were as reflected in the appraiser's return. We turn, therefore, to the definition of terms prescribed in subdivision (f) of said section 402.

█ In contradistinction to the approach obtaining under prior statutes, the new statutory definitions of the phrase "freely sold or * * * offered for sale" authorize consideration of sales to "one or more selected purchasers at wholesale" in the determination of value provided such sales are made in the "ordinary course of trade" at a price which fairly reflects market value and without restrictions as to disposition or use of the merchandise by the purchaser. The record is abundantly clear that the instant sales to Acme Chicago, the parent company, were not circumscribed by any restrictions as to use or disposition of the merchandise. █ The statute expressly authorizes sales to a selected purchaser. Contrary to the contention advanced by appellant, the fact of the parent and subsidiary relationship existing between the exporter and the importer does not of itself preclude consideration of whether or not there was an export value for the instant merchandise, nor does the fact that the importer was the sole purchaser

of the merchandise prima facie affect the question of export value. To hold otherwise would necessitate reading into the statute by construction a limitation unwarranted by the plain language of the pertinent provisions of the statute.

The record is also clear that the prices did not vary by reason of the quantities sold and that all sales for exportation to the United States were f.o.b. Toronto, the exporter's home situs. We, therefore, agree with the court below that the elements of "usual wholesale quantities" and "principal markets" are not here in contention. *Jenkins Brothers* v. *United States*, 25 CCPA 90, T.D. 49093.

The issue of whether or not there was an export value for the merchandise under consideration depends, as stated by the court below, "upon the existence of sales in the ordinary course of trade at prices which fairly reflect the market value of the merchandise."

The trial court, relying on the general statement contained in Senate Report No. 2560, 84th Congress, Second Session, to accompany H.R. 6040, which became the Customs Simplification Act, expressed the view that one of the important purposes which was carried into effect by the passage of the Customs Simplification Act of 1956 was to eliminate foreign value as a basis for valuing imported goods for duty purposes.

The trial judge stated :

It would be strange if foreign value were eliminated as a basis for customs valuation and yet the incidents of foreign value, such as the ordinary course of trade of selling merchandise for home consumption, would be allowed to control or affect export value. Such a view, it seems to me, would negate the intention to eliminate foreign value as a method of valuation, and would certainly not *simplify* customs administration; it would *complicate* it. I therefore, find that evidence as to conditions or practices obtaining in the trade of selling merchandise of the class or kind involved for home consumption in Canada is not probative of any fact necessary to a determination of whether such merchandise was or was not sold "in the ordinary course of trade" within the meaning of that term, as used and defined in the statute.

The Appellate Term, one judge dissenting, disagreed with the view thus expressed by the trial judge, stating, in substance, that normal conditions and practices in the trade, within the purview of the term "ordinary course of trade," do not "require that any usual transactions be disregarded"; that it did not construe "ordinary course of trade" as limited to sales for exportation to the United States but that it should be construed as embracing the usual practices appertaining to all sales of such or similar merchandise; that where sales are made in the regular course of business, it is appropriate to consider such transactions to ascertain the price which fairly reflects the market value of the merchandise and that it was a pertinent and proper inquiry to look into and consider the customary practices in Canada with regard to the sale of steel strapping of the class or kind here involved.

We find ourselves in harmony with the view expressed by the majority that all sales in the ordinary course of trade are proper for consideration in ascertaining the price which fairly reflects the market value of the merchandise and that evidence of price, and hence of the value of goods in the foreign market, is relevant to the ultimate determination of the export value of imported merchandise within the ambit of section 402(b) of the Tariff Act of 1930, as amended, supra, in the case of sales to selected purchasers.

The record discloses that merchandise similar to that here in issue was manufactured by one other Canadian firm and sold only for home consumption. The record further shows that, for a reasonable time prior to the importation under consideration, it was the usual and normal practice for the manufacturers and sellers of identical merchandise to offer their goods for sale both for domestic consumption to industrial users, and for exportation to the United States, to one selected purchaser for distribution and resale. The merchandise sold in carload lots for home consumption included expenses of sale while that sold for exportation to this country excluded such expenses.

After a thorough analysis of the evidence of record and consideration of the arguments of counsel and the cases relied on by the opposing parties, we find that the record amply supports the conclusion of the Customs Court that:

The record in the instant case does, * * * establish that included in the price at which such merchandise is sold for home consumption in Canada were certain selling expenses which were not incurred in export transactions; that the export price differs from the domestic price only to the extent of the value of said expenses; and that the 30 per centum deduction fairly represents the savings in cost effected by the elimination of the several items comprising selling expenses.

It also establishes that the invoice prices were equal to the sum of the production costs, general expenses entering into export transactions and profit, and that such prices fairly reflected the market value for exportation to the United States.

This we consider to be substantial evidence of a price which embodies all of the material elements entering into the new statutory definition of export value in the case of sales to one or more selected purchasers. Accordingly, we conclude, as did the court below, that appellee has sustained its burden of establishing that there was an export value for the instant merchandise and that such value was represented by the invoice and entered values.

The judgment of the Customs Court is *affirmed*.