(R.D. 11212)

C. J. Tower & Sons of Niagara, Inc. *v.* United States

Entry No. 8141.

(Decided August 3, 1966)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff. *John W. Douglas,* Assistant Attorney General (*Harold L. Grossman,* trial attorney), for the defendant.

Ford, Judge: The merchandise, the dutiable value of which is here involved, consists of a quantity of aluminum masters upon which material to be reproduced is typed or written. The parties agree that the merchandise does not appear on the list of articles designated by the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521, as provided for in section 6(a) of the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165. Accordingly, the imported merchandise is dutiable under section 402 of the Tariff Act of 1930, as amended, *supra.*

Appraisement was made on the basis of constructed value, as defined

in section 402(d) of said act, as amended, at 20½ cents each, Canadian currency. Plaintiff herein contends the proper basis is export value under section 402(b) of said act, as amended, and the proper dutiable value is 14 cents each, Canadian currency. Alternatively, it is contended that, if the court finds that export value is not the proper basis, then constructed value is the proper basis and said value is also 14 cents Canadian currency.

This case proceeded to trial at the request of plaintiff's attorney who objected to suspension under *Acme Steel Company* v. *United States*, 48 Cust. Ct. 497, Reap. Dec. 10135. After plaintiff filed its brief, a stipulation was entered into at the request of Government counsel "that the time within which the defendant may serve and file its brief herein be extended to and including thirty days after a decision becomes final in the case of *Acme Steel Co.* v. *United States*." The *Acme Steel Company* case was then pending before the second division, appellate term. The Court of Customs and Patent Appeals decided said *Acme* case which is reported in 51 CCPA 81, C.A.D. 841. The case at bar was submitted on April 10, 1962, and resubmitted on June 22, 1965.

Received in evidence was a recapitulation of the exporter's shipments, in Canada and to the United States, of merchandise similar to that involved on this appeal. The recapitulation pertained to the 6-month period ending February 28, 1961. The remainder of the record consists of the testimony of one witness called by plaintiff.

The merchandise which is the subject of this appeal was exported by Addressograph-Multigraph of Canada, Ltd., to Addressograph-Multigraph Corp. in the United States. The exporter is a wholly owned subsidiary of the importer. The shipment in question was comprised of a quantity of aluminum masters, each master consisting of a sheet of aluminum approximately four one-thousandths of an inch in thickness, 10 inches in width, and 15 inches in length. The master, which is perforated along two of its opposite ends, is used in conjunction with Multigraph machines, items which the exporter also produces. The master, which is capable of being written on or typed on, is used as a medium for transferring images in the offset printing process carried on by the Multigraph machine. The exporter in this case manufactures the Addressograph and Multigraph machines, parts and supplies, in addition to providing mechanical service. The merchandise was invoiced at 14 cents per master in Canadian funds.

The sole witness, called by plaintiff, was Mr. Robert A. Davies, the secretary and assistant treasurer of the Canadian exporter. Mr. Davies has held his present position since November 1956, but has been connected with the accounting and treasury aspects of the same

firm since March 1942. Mr. Davies is responsible for the operation of all the exporter's accounting divisions, including the cost department which establishes costs on all products manufactured in the Canadian plant. The exporter's cost records were maintained under the witness' supervision. Pursuant to his duties, the witness regularly visited the head office of the importer, located in Cleveland, Ohio. Mr. Davies' duties also included membership on the operating committee of the Canadian exporter which establishes production policies, and his chairmanship of the firm's pricing committee which establishes selling prices for all products distributed by the Canadian plant.

The witness testified that to the best of his knowledge his firm is the sole Canadian manufacturer of merchandise comparable to that involved on this appeal and that his own company does not export these aluminum masters to anyone but the importer involved in this case. In Canada, the identical item is sold only by the distributing agencies of Mr. Davies' firm to product consumers rather than product distributors.

In all major Canadian cities the firm has branch sales, service, and supply operations which are controlled by corresponding head office departments. All pecuniary amounts as to which testimony was offered were expressed in Canadian funds. The witness stated that 20 cents per unit was the lowest price at which masters identical to those involved on this appeal were sold in Canada. The appraised value of 20½ cents per master is the equivalent of only one price in a range of prices at which the exporter's Canadian branches sell the masters in the Canadian domestic market. The exporter's domestic price varies with the quantity purchased, i.e., one thousand or more sold the price is 20 cents per master, if the quantity varies from one hundred to nine hundred the price is 20½ cents per master, and if anywhere from one to ninety-nine masters are sold the price is 21 cents per unit. The witness testified that the exporter's domestic prices include, among other things, amounts attributable to: Sales commissions on Canadian distribution, general and administrative expenses such as advertising, head office sales department operation, head office service department operation, branch accounting department operation, and credit accounting operation. Mr. Davies stated that the aforementioned expenses were in his company's opinion not applicable to export shipments. The witness testified that the selling price for export to the United States amounted to $140 per one thousand aluminum masters. He then proceeded to break this figure into its component costs. The costs given correspond to those incurred by the exporter approximately one day prior to the exportation involved on this appeal; it takes slightly less than one day to manufacture one

thousand masters. The costs incurred in producing one thousand masters were as follows:

| | |
|---|---|
| Raw materials_____ | $39. 15 |
| Fabricating: | |
| Productive labor_____ | 21. 47 |
| Factory overhead_____ | 42. 56 |
| General expenses, overhead, and profit____ | 32. 32 |
| All containers and coverings and other expenses necessary to placing merchandise in condition packed ready for shipment to United States_____ | 4. 50 |
| TOTAL _____ | $140. 00 (Canadian dollars) |

Mr. Davies indicated that the amount of general expense and administrative expense included in the export selling price was deemed to be the normal expense and a fair approximation of the elements in general expense and administrative expense which would be applicable to exportations to the United States. The witness also indicated that the sum of $32.32 reflected general expense, overhead, and profit applicable to production and sale by the company of the same general class or kind of merchandise in the ordinary course of trade for shipment to the United States for 6 months prior to the date of exportation.

Comparing the exporter's Canadian and United States sales for the 6-month period ending February 28, 1961, plaintiff's exhibit 1, the recapitulation, indicated that of the 25,600 aluminum masters produced 5,600 were shipped to Canadian branches while 20,000 were exported to the United States importer, that is plaintiff in this case. The witness, comparing his firm's export and domestic prices, stated that the United States invoice price of 14 cents per master, which plaintiff claims is the correct value for reappraisement, included approximately the same percentage of profit obtained as a result of domestic sales in the Canadian market. Mr. Davies testified that, in actual practice, the United States price was 70 percent of the lowest Canadian domestic selling price. He attributed the 30 percent difference to the fact that certain costs, not incurred in, nor applicable to the manufacture of products exported to the United States, were not allocated to such merchandise in determining their cost of production or sales price. These costs, which the witness considered inapplicable to the merchandise involved on this appeal, were incurred in connection with the exporter's operation of a number of exclusively domestic departments such as sales, service, credit, branch accounting; its advertising; and the payment of commissions on Canadian sales. The witness testified that the services which were provided as a result of incurring these

expenses were not necessary to the production or sale of the merchandise involved on this appeal.

With regard to shipments to the United States, the exporter maintained a uniform price per unit, regardless of quantity, as opposed to the aforementioned sliding scale of prices applied to its domestic sales. The export sales price, 14 cents per master, which was f.o.b. Toronto factory, was according to the witness, not fixed or dictated by the importer, but was established by the exporter, the wholly owned subsidiary of the importer. Mr. Davies also testified that the sale by his firm to the United States importer was without restrictions as to disposition or use and was made at the lowest price which the exporter would accept.

Counsel for plaintiff, who was also counsel in the *Acme Steel* case, *supra*, has attempted to establish a record similar to the one made therein. The issue in the case at bar is the same as in the *Acme Steel* case, *supra*. The judicial interpretation of the involved statute in the *Acme Steel* case, *supra*, and in *John V. Carr & Son, Inc.* v. *United States*, 52 CCPA 62, C.A.D. 860, permits me to consider the domestic price in Canada in ascertaining whether the price fairly reflects the market value in a situation such as here involved where sales for export are made to related selected purchasers. In doing so, it is observed that the differential between the appraised value of 20½ cents each, Canadian, and the claimed price of 14 cents each, Canadian, is approximately 30 percent. This difference, it is contended by plaintiff herein, is due to the fact that certain items of expense, in the opinion of the company, are not incurred for export sales. These items were enumerated by the witness to be sales commissions on Canadian distribution, general and administrative expenses such as advertising, head office sales department operation, head office service department operation, branch accounting department operation, and credit accounting operation. The witness further testified that the sales price to the importer, which did not include the above expense, did include approximately the same percentage of profit as was obtained in Canadian sales. Such cryptic language relative to these items "which are not applicable, in our opinion, to export shipments" and profit for exports being "approximately the same percentage" as for domestic sales is not such as would permit the court to make a finding of export value contended for by plaintiff. Accordingly, plaintiff has failed to overcome the presumptive correctness attached to the value.

Likewise, on the posture of the record herein, plaintiff has failed to establish the constructed value to be 14 cents each, Canadian, as claimed, since the testimony was not such as would permit the court to make a finding of constructed value. The witness in addition testified, in effect, that the constructed value figures covering general expense and administrative expense were deemed to be "normal ex-

penses" and "a fair approximation" of such expense, as would be applicable to sales for export to the United States. Such testimony is insufficient to overcome the presumptive correctness attaching to the value found by the appraiser.

On the record herein, I find the following facts:

1. That the merchandise covered by this appeal for reappraisement consists of aluminum masters exported from Canada by Addressograph-Multigraph of Canada, Ltd., and imported by Addressograph-Multigraph Corp. of Cleveland, Ohio.

2. That said merchandise is not specified on the Secretary of the Treasury's final list, 93 Treas. Dec. 14, T.D. 54521, and thus is subject to appraisement under the provisions of section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

3. That appraisement was made on the basis of constructed value, as that value is defined in section 402(d) of said act, as amended, *supra*.

4. That, at the time of exportation, the exporter was the sole producer and exporter of *such or similar* merchandise.

5. That the ultimate consignee and exporter herein are related persons within the meaning of section 402(g) of the Tariff Act of 1930, as amended, *supra*.

6. That, during the period covered by the instant importation, the Addressograph-Multigraph Corp. of Cleveland, Ohio, was the only United States purchaser at wholesale of the involved merchandise.

7. That plaintiff, as to its claim for export value, as such value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, *supra*, has failed to establish by substantial evidence that certain items of expense incurred in sales in the foreign market are not incurred in sales for export to the United States; and that without such items, the invoice value fairly reflects the market value.

8. That plaintiff, as to its claim for constructed value, as such value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, *supra*, has failed to establish by substantial evidence a value different from that found by the appraiser.

I, therefore, conclude as matters of law:

1. That plaintiff has failed to overcome the presumption of correctness attaching to the value found by the appraiser.

2. That constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, *supra*, is the proper basis for the determination of value of the merchandise involved herein.

3. That such value is the appraised value.
Judgment will be entered accordingly.