UNITED STATES *v.* ALFRED KOHLBERG, INC.

**No. 4526.**—Invoices dated Swatow, China, November 25, Shanghai, China, December 20, 1935.
Certified November 25, December 21, 1935.
Entered at New York January 2, February 5, 1936.
Entry Nos. 18801, 796453.

Third Division, Appellate Term

(Decided February 17, 1939)

*Webster J. Oliver,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellant.
*Lane & Wallace* (*William Young* of counsel) for the appellee.

Before CLINE, EVANS, and KEEFE, Judges

KEEFE, Judge: These are applications filed by the Assistant Attorney General for a review of the decision of the trial court involving a matter of discount disallowed by the appraiser upon handkerchiefs exported from Swatow, China, and upon bedspreads exported from Shanghai, China. The invoices show that 3 per centum discount was deducted from the *per se* prices of merchandise from Swatow and 2 per centum discount from the *per se* prices of the merchandise from Shanghai. There is no dispute relative to the invoice prices which represent the export value of the merchandise.

Extensive evidence was submitted and we believe the following statement outlines the facts involved herein:

The importers of these materials purchase in China through commissionaires or compradores, who finance or guarantee all business, or through so-called Number One Chinamen, who guarantee delivery. In buying the merchandise certain commissions are charged the American importers by these commission merchants whom we will call buying agents. The foreign sellers of the merchandise uniformly grant discounts for cash. In the Swatow district the discounts range from 3 to 5 per centum, while in the Shanghai district only 2 per centum for cash is allowed. However, it is seldom that these discounts inure directly to the benefit of the American purchaser. In fact the American purchaser pays his buying agent in China the *per se* price of the merchandise as invoiced. The proceeds derived from the discount obtained from the sellers of the merchandise are retained in the office of the purchaser's agent in China, where it is sometimes distributed in whole or in part as a sort of bonus to certain

employees. The reason for this is that when merchandise arrives in the establishment of the purchasing agent it is inspected and all defective goods are rejected. Also other services beneficial to the American purchaser are rendered. It further appears that the sellers are always desirous of obtaining cash upon delivery of the merchandise and the buyer's agent advances the money on behalf of his principal. The evidence adduced by the importer as well as the reports of the special agent, introduced by the Government, are clear upon the point that the Chinese sellers uniformly allow a 2 per centum discount in the Shanghai market and discounts of from 3 to 5 per centum in the Swatow market, although none of the sellers will quote a price without knowing what discount will be expected by the purchaser. The special agent also reported instances where the American buyers maintain their own purchasing offices in China, receive the regular discounts from the sellers and that such discounts inure entirely to the benefit of the purchasing firms.

Upon the evidence submitted, the trial court found that the sole issue is whether or not the discounts are deductible in finding the value of the merchandise, and that the weight of the evidence establishes that all sellers of such or similar merchandise to that exported from Shanghai grant a 2 per centum discount from the invoice prices, and from Swatow a 3 per centum discount; that the undisputed evidence establishes that the discounts were not returned to the sellers; and that the disposition of the discount by the agents of the purchasers was immaterial. The court was further of the opinion that:

Whether this item of 2 per centum in Shanghai and 3 per centum in Swatow be considered as a discount for cash, or whether it be considered as a buying commission, it is properly deductible in arriving at the proper dutiable value of this merchandise, since the evidence shows that these commissionaires are bona fide commissionaires of the importers in this country and, under the law, the receipt by them of this discount or commission does not make it a dutiable item.

Whereupon the trial court held that the proper dutiable values of the merchandise covered by reappraisement 112074–A are the unit invoice values, less 3 per centum discount, plus packing, as invoiced, and that such values in respect to reappraisement 112408–A are the unit invoice values less a discount of 2 per centum, plus packing, as invoiced, and that such values represent the export values of the merchandise.

Upon appeal the Government contends that the trial court erred: First, in finding that it was not concerned with the usual wholesale quantity because of the expression of counsel that the sole issue was the deduction of 2 or 3 per centum discount for the reason that the Government did not expressly waive that necessary element of proof required of an appraising party under section 501, act of 1930, and that, in the absence of evidence to establish a given quantity as the usual wholesale

quantity, the proof is fatally defective; second, that the commission-aires were independent brokers who not only perform services for the buyer but also act as a broker upon behalf of the seller and prepare the goods sold for export by laundering, etc., an incident in placing the merchandise in condition packed ready for shipment to the United States, and that the payment was also made by the seller to the commissionaires to compensate them for services performed on behalf of the seller in obtaining a buyer as well as for packing, sorting, or laundering the merchandise; and third, that the deductions were neither a commission nor a discount, but rather an allowance made to persons not employed by the buyers. It is alternatively contended that the proper dutiable value of merchandise is not the price the seller is willing to receive but rather the price the buyer pays.

From a consideration of the evidence in this case, we are of the opinion that inasmuch as the sellers here consistently grant the discounts in question upon all sales of the merchandise they manufacture, and that the report of the special agent who investigated the wholesale market and reported upon the wholesale sales, confirms that fact and states such sales were in quantities comparable with the quantities appearing upon the invoices, the question of the usual wholesale quantity does not seem to us to be an issue herein. Counsel for the Government in argument upon appeal to this division of the court also stated:

The sole issue in this case, therefore, is whether or not this two per cent on the importations from Shanghai, which the importer claimed to be part of the buying commission, and the three per cent on the importations from Swatow are deductible in finding the proper appraised value. In other words, was the appraised value, which is the unit invoice, correct, or was that deduction of two and three per cent respectively proper as being considered as part of the buying commission.

The question of usual wholesale quantity does not always arise as one of the elements of proof in questions of value coming before this court. In the case of *Jenkins* v. *United States*, 25 C. C. P. A. 90, T. D. 49093, the court stated:

Of course, where the price at which an article is sold does not vary according to quantities sold, no question of usual wholesale quantity can arise, and in such case a single article may sometimes be regarded as a usual wholesale quantity.

Here, it is the uniform practice of the sellers to grant the discounts in question, and as the prices have been found to be correct by the appraiser, the *per se* prices and the wholesale quantity thereof are not at issue. As a matter of fact the special agent stated that the merchandise in question can be purchased at the same prices and discount in the usual wholesale quantities without the intervention of a compradore or purchasing agent.

There is nothing in the record to indicate that the commissionaires and buying agents also act as brokers on behalf of the sellers. The

fact that the goods were inspected and the rejected goods returned, or that they were repacked and laundered when necessary, does not operate to put the commissionaire in the position of acting for the seller of the goods. It has been held by the courts respecting commission that payment is made in connection with the purchase of goods abroad and it is treated as something separate and distinct from market value and as such is a nondutiable item. See *United States* v. *Bauer*, 3 Ct. Cust. Appls. 343, T. D. 32627. Also in the case of *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007, it was held that a commission paid by an importer to a commissionaire to receive goods, unfold and compare them with samples, procure cases and attend to the packing and shipping of the same, entered into the cost of the goods to the importer, but did not become a part of the market value of the goods, and the charge for such service was simply a commission and constituted a nondutiable item. Even while commissions paid by a seller to his agent are ordinarily a part of the selling price of goods, when it is shown that the buyer could buy direct from the seller without the intervention of an agent, but chose to buy through the agent, to whom he had to pay 3 per centum added by the exporter, such commission constitutes no part of the export value. See *United States* v. *Enrique Vidal Sanchez*, 15 Ct. Cust. Appls. 443, T. D. 42642. In *United States* v. *Case*, 13 Ct. Cust. Appls. 122, T. D. 40958, compensation paid to an agent of the importer for his services in buying material and furnishing it to Chinese makers of lace, and also for his services in supervising the work and collecting it when finished, was held to be a commission and no part of the market value.

In the case of *Western Sausage & Provision Co., Inc.* v. *United States*, Reap. Dec. 2049, it was held that the market value of merchandise upon which a cash discount was allowed is the price less such cash discount, notwithstanding that cash was not paid, nor any cash discount actually allowed. The Supreme Court in *Arthur* v. *Goddard*, 96 U. S. 145, 24 L. ed. 814, held that where goods were sold for a certain sum less 2 per centum cash discount, and the net price represented the foreign-market value of such goods, the net price was the dutiable value, notwithstanding that the cash discount was not actually allowed. In defining the dutiable value of merchandise the court stated:

The value means the cash value. The price at thirty days' credit might be different, and the difference would probably be greatly increased by a credit of six months or a year, but the value or cost would still be the same. The difference would be chargeable to the credit, and not to a difference in the value of the goods.

Market value has been defined as the price at which the manufacturer holds his merchandise for sale, the price at which he freely offers it in the market, and the price which he is willing to receive,

and the purchasers are willing to pay, in the ordinary course of trade. See *United States* v. *Sixteen Cases of Silk Ribbons*, 27 Fed. Cases 1099. The prices in question at which the manufacturers or sellers hold their merchandise for sale and at which they freely offered it in the market were less certain discounts which were proven to be uniform in the trade. The purchasers herein, who were represented by commissionaires, were willing to pay the prices offered by the sellers, less the discounts for cash. Such prices, in our opinion, represent the dutiable value of the merchandise, and it is immaterial whether or not the discounts actually inured to the benefit of the commissionaires' principals.

After a careful consideration of the testimony and the documentary evidence we are unable to find any error in the decision of the trial court and make the following findings of fact:

1. That the merchandise consists of Chinese linen handkerchiefs imported from Swatow, China, and cotton lace bedspreads, imported from Shanghai, China.

2. That the export value of the merchandise is higher than the foreign value thereof.

3. That the items of discount were uniformly granted by the sellers of linen handkerchiefs and cotton lace bedspreads in China to all purchasers in the ordinary course of trade in the usual wholesale market for such articles.

4. That the prices at which such or similar merchandise are freely offered for sale to all purchasers in the principal markets of China from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such prices, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, are, in respect to the linen handkerchiefs from Swatow, China, the *per se* unit invoice prices, less 3 per centum discount, plus packing; and in respect to the cotton lace bedspreads, from Shanghai, China, the *per se* unit invoice prices, less 2 per centum discount, plus packing.

5. That the export value of the merchandise herein is as set forth in paragraph 4 of the findings of fact.

Therefore we conclude as a matter of law:

1. That the dutiable value of the merchandise is represented by the cash value of the merchandise, to wit, the *per se* unit prices less the invoice discounts.

2. That the commissionaires, through whom the importers purchased and shipped their merchandise, acted solely upon behalf of their principals and in their stead.

3. That the dutiable value of the merchandise herein is as set forth in paragraph 4 of the findings of fact.

The decision and judgment of the trial court is therefore affirmed and judgment will be rendered adjudging the dutiable value of the merchandise herein to be as entered.