(R.D. 11269)

PAN AMERICAN IMPORT CORP.
M. H. GARVEY COMPANY } v. UNITED STATES

Entry 2699, etc.

(Decided March 2, 1967)

*Walter E. Doherty* for the plaintiffs.

*Barefoot Sanders*, Assistant Attorney General (*Arthur H. Steinberg*, trial attorney), for the defendant.

RAO, Chief Judge: These appeals for reappraisement, consolidated at the trial, concern the proper dutiable value of certain fishing reels imported from Japan and entered at the port of Boston between November 1962, and April 1963. They were appraised at the invoice unit values, plus 1.9 percent packing, plus inland charges designated "X" (inland freight, insurance, hauling, lighterage, and storage). Plaintiffs claim that these items are nondutiable; that the invoice unit values represent the ex-factory prices; and that such prices are the proper dutiable values of the merchandise.

The merchandise is not included on the final list published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, and the parties are in agreement that export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of valuation.

In support of their claim, plaintiffs submitted two affidavits executed in Japan. Defendant objected to the admission of these affidavits at the trial on the ground that the exhibits attached to them were copies rather than originals. The proffered documents were tentatively received in evidence subject to ruling by the court at a later date. Defendant now states in its brief that, upon further consideration, it is not pressing its objection. The affidavits and attachments are received in evidence.

Plaintiffs' exhibit 1 was signed by Torayuki Fukunaga and states that it was to certify that Arrow International, Ltd., of Kobe, Japan, a trading company, purchased from Tsuda Clock Mfg. Co., Ltd., of Nagoya, Japan, for the account of Pan American Import Corp., the merchandise listed on the schedule attached. It is further stated that Arrow purchased said merchandise from the manufacturer at the ex-factory prices, net packed, shown on the invoices herein, and that the inland freight, insurance, hauling, lighterage, storage, and other petty charges were paid by Arrow, for the account of Pan American and not to the manufacturer. The schedule attached is a statement by Tsuda Clock Mfg. Co., Ltd., listing shipments made by Arrow of Tsuda's No. B–268 spinning reels and stating that the ex-factory prices included packaging charges.

Plaintiffs' exhibit 2 is an affidavit executed by H. Tsuda, president of K. K. Tsuda Tokei Seizoho (apparently the same concern as Tsuda Clock Mfg. Co., Ltd.). It states:

During the period of September, 1962 through March, 1963 my company sold and delivered to Arrow International Ltd., of Kobe, Japan, certain fishing reels in accordance with the confirmation of order, a copy of which is annexed hereto, marked "A", and in accordance with the statement annexed hereto, marked "B". The unit price was ¥313.20 each, as per said confirmation, which price was the ex-factory price for said merchandise, and included all packing charges at our factory. During this same period of time we offered similar

merchandise for sale to all persons who wished to buy the same at the same prices.

Our factory, at Nagoya, Japan, is a principal market in Japan for the sale of such merchandise for exportation to the United States. During this period we never sold such or similar merchandise on an F.O.B. port of shipment, Japan, basis. No inland freight charges, insurance premiums, hauling and lighterage charges, and storage or other charges were charged by us in addition to the above.

The "Confirmation of Order" attached, covers open face spinning reels, No. B–268, 25,000 pieces at ¥313.20. The second attachment refers to 30,600 pieces and is the same as that attached to plaintiffs' exhibit 1.

No evidence was offered as to other merchandise included in some of the shipments—lures covered by R63/6908, R63/6910, and R64/774, and fishing reels No. R–13 (S 65) covered by R65/11422, some of which were made by another manufacturer. The appeals are deemed abandoned as to these items.

It is settled law that, where merchandise is offered and sold on an f.o.b. port of exportation basis and is never offered or sold at ex-factory prices, the inland charges form an integral part of the value of the merchandise, but that, where the merchandise is freely offered and sold to all purchasers at ex-factory prices, such charges are not part of export value. *United States* v. *Paul A. Straub & Co., Inc.*, 41 CCPA 209, C.A.D. 553; *Albert Mottola, etc.* v. *United States*, 46 CCPA 17, C.A.D. 689; *United States* v. *Gitkin Co.*, 46 Cust. Ct. 788, A.R.D. 132.

Plaintiffs claim that the appraisements here are severable and that reliance may be placed on the presumption of correctness attaching to the appraiser's valuation insofar as the ex-factory prices are concerned, citing *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371. While that case involved an addition by the appraiser representing an increase in unit value due to shrinkage on the voyage, the court stated:

\* \* \* Because, however, the importer had challenged that item only and no other item of the appraisement, the presumption of correctness as to all those others is not destroyed, and, therefore, they stand as presumptively correct. \* \* \*

This principle has been followed in many cases in this court. In *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145, the court said:

\* \* \* If ex-factory prices and other charges are separately stated on the invoices and the appraiser's finding of value is expressed in terms of the invoice unit prices, plus the questioned charges, the appraisement is deemed to be separable. *United States* v. *Dan Brechner*

*et al.*, 38 Cust. Ct. 719, A.R.D. 71; *United States* v. *Gitkin, Co., supra; Valley Knitting Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 599, Reap. Dec. 9627. Under the rule expressed in *United States* v. *Fritzsche Bros., Inc.*, 35 C.C.P.A. (Customs) 60, C.A.D. 371, a party to a reappraisement proceding may challenge one or more of the elements entering into an appraisement, while relying upon the presumption of correctness of the appraiser's return as to all other elements, whenever the challenged items do not disturb the effect of the remainder of the appraisement. Such is the case in the instance of an appraisement at ex-factory-plus-charges value, and the charges may be disputed without the necessity of proof that the ex-factory prices comply with the statutory definition of export value. *United States* v. *Dan Brechner et al., supra.*

Nevertheless, the burden still rests upon plaintiffs to establish that the merchandise is freely sold to all purchasers at prices which do not include the disputed charges. *United States* v. *Gitkin Co., supra; Louis Goldey Co., Inc.* v. *United States*, 55 Cust. Ct. 759, A.R.D. 196; *Renee Antiques, Inc., et al.* v. *United States*, 56 Cust. Ct. 646, Reap. Dec. 11151. The issue here is whether plaintiffs have met this burden.

Plaintiffs' exhibit 1 is entitled to little, if any, weight, since there is nothing in the record to establish either the position of the person signing it in the company in whose name it was executed or that he had any personal knowledge of the transactions referred to. *An-Lee, Inc.* v. *United States*, 55 Cust. Ct. 635, Reap. Dec. 11093. The most it could establish is that Arrow, acting as agent for Pan American, purchased from the manufacturer at the ex-factory prices shown on the invoices.

Plaintiffs' exhibit 2 was executed by the president of the manufacturing company, but there is no statement therein that he had any actual knowledge of the sales practices of his firm. Furthermore, except as to the sales to Arrow, the affidavit contains no evidentiary facts. There is a conclusory statement that the firm offered "similar" merchandise to all persons at the same prices. Such a statement, unsupported by evidence of actual offers or sales, is not sufficient to establish that the merchandise was freely sold or offered for sale at those prices. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495; *United States* v. *Baar & Beards, Inc.*, 46 CCPA 92, C.A.D. 705; *United States* v. *Kurt Orban Company*, 44 Cust. Ct. 763, A.R.D. 117. Moreover, under section 402(b), as amended, where there are actual sales, offers may not be considered. *W. J. Byrnes & Company* v. *United States*, 50 Cust. Ct. 406, Reap. Dec. 10451, application for review dismissed 50 Cust. Ct. 574, A.R.D. 158. The affidavit seems to indicate that "such" merchandise was sold only to Arrow, or its principal, during the period involved herein, but the record does not establish that Arrow's principal was a selected purchaser within the meaning of section 402(f)(1)(B) or that sales to it were in the ordi-

nary course of trade at prices which fairly reflected the market value of the merchandise. Consequently, the affiant's statement that such merchandise was never sold on an f.o.b. basis is without probative value. Thus, plaintiffs have not established either that such merchandise was freely sold to all purchasers at the claimed ex-factory prices or that it was sold to a selected purchaser at prices fairly reflecting market value.

On the record presented, the appraised values must be sustained.

I find as facts:

1. That the merchandise involved herein consists of fishing reels imported from Japan and entered at the port of Boston between November 1962, and April 1963.

2. That the merchandise is not included on the final list published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

3. That the merchandise was entered at the invoice unit values, exclusive of inland charges and buying commissions itemized on the invoices.

4. That the merchandise was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoice unit values, plus 1.9 percent packing, plus inland charges designated "X" (inland freight, insurance, hauling, lighterage, and storage).

5. That the record does not establish that, on or about the dates of exportation, such or similar merchandise was freely sold or offered for sale in the principal markets of Japan to all purchasers in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States at ex-factory prices, not including inland charges and packing.

6. That no evidence was presented as to merchandise other than spinning reels No. B–268.

I conclude as matters of law:

1. That the appeals be deemed abandoned and dismissed as to merchandise other than spinning reels No. B–268.

2. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the said spinning reels.

3. That plaintiffs have failed to establish a value for said merchandise other than the appraised value.

4. That the export values of the said merchandise are the appraised values.

Judgment will be entered accordingly.