## IMPERIAL PRODUCTS, INC.

v.

## UNITED STATES.

C.D. 4672,
Court No. 72–11–02357.

United States Customs Court.

Nov. 5, 1976.

Stein & Shostak, Los Angeles, Cal. (Marjorie M. Shostak, Los Angeles, Cal., of counsel) for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D.C. (Robert B. Silverman, New York City, trial atty.), for defendant.

FORD, Judge.

Pursuant to rule 8.2 of the rules of the court, plaintiff has moved for summary judgment. Defendant has filed opposition thereto on the ground that the following issues of fact are subject to trial:

(1) Was such or similar merchandise freely sold to other purchasers?

(2) Did the price at which such or similar merchandise was freely sold to other purchasers include the royalty fee incurred by plaintiff herein?

(3) Did the price at which such or similar merchandise was freely sold to other purchasers include the contractual obligations incurred by plaintiff herein with regard to minimum quantity of purchase and computation of royalty fee payments?

(4) Did the purchase price plaintiff paid for the subject merchandise include the amount paid for royalty fee or was the royalty fee paid for a separate right to manufacture the Miracle Brush?

(5) Did the plaintiff's exclusive right to manufacture and sell the Miracle Brush increase the value of the components, one of which was the imported brush heads?

The merchandise covered by this action consists of cloth brush heads for Miracle Brushes and Mini Miracle Brushes which were appraised on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs

Simplification Act of 1956, 19 U.S.C. 1401a(b), at the invoice value of 12 cents per unit, f.o.b. port, plus 6 cents per unit royalty fees, net packed. The above facts are agreed upon by the parties. In addition the parties agree the appraisement is separable. Therefore, the issues of fact which defendant contends exist, all relating to the elements of appraisement, are for the reasons which will be set forth *infra* not issues of material fact subject to trial.

The question of separable appraisements and the necessary proof in such matters have been the subject of extensive litigation. In *United States v. H. M. Young Associates, Inc.*, C.A.D. 1138, 505 F.2d 721, 62 CCPA 20 (1974), the court reviewed the doctrine of separability and its background making the following statements:

> As we said in *U.S. v. Pan American Import Corp.* [C.A.D. 993, 428 F.2d 848, 57 CCPA 134 (1970)], the phrases "separable appraisement" and "separability rule" were succinctly explained in *United States v. Supreme Merchandise Co.*, 48 Cust.Ct. 714, A.R.D. 145 (1962), as follows:
>
>> If ex-factory prices and other charges are separately stated on the invoices and the appraiser's finding of value is expressed in terms of the invoice unit prices, plus the questioned charges, the appraisement is deemed to be separable. *United States v. Dan Brechner et al.*, 38 Cust.Ct. 719, A.R.D. 71 (1957; *United States v. Gitkin Co.*, * * *; *Valley Knitting Co., Inc., et al. v. United States*, 44 Cust.Ct. 599, Reap.Dec. 9627 (1960). Under the rule expressed in *United States v. Fritzsche Bros., Inc.*, 35 CCPA (customs) 60, C.A.D. 371 (1947), a party to a reappraisement proceeding may challenge one or more of the elements entering into an appraisement, while relying upon the presumption of correctness of the appraiser's return as to all other elements, whenever the challenged items do not disturb the effect of the remainder of the appraisement. Such is the case in the instance of an appraisement at ex-factory-plus-charges value, and the charges may be disputed without the necessity of proof that the ex-factory prices comply with the statutory definition of export value. *United States v. Dan Brechner et al., supra.*

The separability rule is a salutary one. In *United States v. Bud Berman Sportswear, Inc.*, 55 CCPA 28, C.A.D. 929 (1967), we described it as a "framework of convenience for the analysis of disputed appraisements." While clearly productive of procedural convenience, the rule is also rooted in fairness. In every case of disputed appraisement the importer confronts, and the government enjoys, a presumption of correctness attaching to the appraiser's valuation and all items therein. Sec. 501, Tariff Act of 1930, 28 U.S.C. § 2635. When the appraisement is separable and the importer challenges less than all of its separate items, it would not only be wasteful of judicial time to require the importer to prove the correctness of presumptively correct and unchallenged items, it would be unfair and incongruous. Absent the separability rule, the courts, the government, and importers would all undergo an anomalous process in which plaintiff would undertake to prove the correctness of unchallenged actions of defendant, while defendant, presumably, would abandon the presumption of correctness and attempt to prove its own unchallenged actions incorrect. To require an importer facing a separable appraisement to "challenge all or challenge nothing" seems manifestly unfair, not only to the importer, but also to the courts and to the society, which must be taxed to pay for a portion of every litigious process in which the government participates. In this sense, the separability rule, like the doctrine of collateral estoppel and other procedural rules, is grounded in public policy. Collateral estoppel reduces the number of lawsuits. Separability reduces the length and complexity of reappraisement cases.

The court further commented with respect to its decision in *Pan American, supra*:

> * * * Appellant reads too much into our opinion in *Pan American*. We held in

that case that an, importer challenging only the addition of inland charges could rely on the presumption of correctness of the ex-factory *price* as the export value, thus recognizing the continuing viability of the separability rule. We did not hold, as argued by appellant, that the importer was required to prove "that *all* elements of export value have been met."

\*　　\*　　\*　　\*　　\*　　\*

Our opinion in *Pan American* must be read in the light of the fact situation there present. Plaintiff had elected to challenge the correctness of the addition of inland charges. The *bona fides* of inland charges as such depends on whether such or similar merchandise is freely sold or offered to all at ex-factory prices. Part of plaintiff's burden *on that issue*, therefore, was to prove that such or similar merchandise was freely sold or offered to all on an ex-factory basis. [Emphasis quoted.]

■ Additionally it is to be observed the separable charges involved are not inland charges but a royalty fee which is quite different. Where a separable appraisement exists plaintiff may rely upon the appraised unit value and contest the separable charge.

■ A royalty fee may or may not be part of the dutiable value. When a royalty is paid on each and every importation and is inextricably intertwined with the imported merchandise such fee is part of the dutiable value. *BBR Prestressed Tanks, Inc., Frank P. Dow Co. Inc., of L.A. v. United States*, 64 Cust.Ct. 787, A.R.D. 265 (1970); *Erb & Gray Scientific, Inc. v. United States*, 53 CCPA 46, C.A.D. 875 (1966). When the fee is not inextricably intertwined with the production of the imported merchandise or is optional or is paid for the exclusive right to manufacture and sell in a designated area it is not dutiable. *United States v. Rohner Gehrig & Co., Inc.*, 9 Cust.Ct. 591, R.D. 5724 (1942).

■ In the instant case attached to the motion for summary judgment are the original contract and its subsequent modification. So far as is pertinent the contract

provided for the purchase of all brush heads for use in the manufacture of the Miracle Brush from Nippon Seal Co., Ltd. The purchaser paid 11 cents per unit to Takashimaya Co., Ltd., the export agent of Nippon. Plaintiff was obligated to purchase a minimum of 2,200,000 brush heads per year and a maximum of up to 3,000,000. A royalty of 7 cents for one-third of the total brush heads purchased was to be paid to Nippon within 60 days after date of the bill of lading. It also appears the same brush head used in manufacturing the Miracle Brush which utilized a patented handle was used in the manufacture of the Mini Miracle Brush using a nonpatented handle.

It is urged the royalty fee was for the exclusive right to manufacture and sell in the United States the brush with the patented handle. The one-third basis of the fee was arrived at by virtue of the fact that one-third of the heads were manufactured with the patented handle.

The parties are in agreement that no royalty was paid on the instant importation. However since the evidence establishes the payment of royalties on approximately one-third of the brush heads imported, it is incumbent on the court to determine whether or not such a fee is dutiable.

As indicated, *supra*, the imported brush heads manufactured by Nippon Seal Co., Ltd. were purchased by plaintiff for manufacture of two types of brushes. One brush utilizes a patented rotating handle known as the Miracle Brush. The patent is owned by Nippon Seal Co., Ltd. The other brush utilizes a fixed handle which is not patented and is known as the Mini Miracle Brush. The license and right to manufacture and sell the Miracle Brush on an exclusive basis is set forth in the contract between the parties and its modification.

Defendant relies upon *BBR Prestressed Tanks, Inc., supra*, and *Erb & Gray* cited therein. In *BBR* an importer of machinery was compelled to pay a royalty fee on each machine imported, the fee to benefit the manufacturer. It was contended therein that the money paid was a license fee and as such not dutiable. The court found for

the defendant stating that a sum which is contractually required in which the importer has no option in connection with such an importation and which is intimately related to the use of the importation must be included in the price of merchandise under export value. The court further stated when a so-called royalty fee is paid for each machine and such compulsory payment is made to the seller and not the patent holder, the identity of the fee to the price is stronger than its relationship to the exclusive territory within which the purchaser may utilize the BBR method of constructing prestressed tanks.

*BBR* is distinguishable from the case at bar since the royalties are payable on only approximately one-third of the total importations. The payment of the fee to the seller and not the holder of the patent in both *BBR* and the instant case while similar is distinguishable. In this case Nippon is both the seller and' the patent holder and accordingly benefits from the royalty. Therefore, the linking of the royalty is not so constituted as to be considered part of the purchase price.

In *Erb & Gray*, the court considered the importations of microscopes which were appraised at a unit value which included a "New York Office Service and Operation Fee." The Court of Customs and Patent Appeals held, based upon the substantial evidence of record, that the service fee paid by the importer on each unit was properly part of the export value. This fee was agreed upon by the importer in order to continue the operation of the New York office. The payment once agreed upon was not optional but required for each and every microscope imported and became a condition of the purchase of each instrument. The facts at bar indicative of a fee for payment of a royalty on only one-third of the heads shipped are distinguishable. Payment was not made on each and every importation as in *Erb & Gray*. In addition, as indicated, *supra*, the payment of a royalty on one-third of the amount of brush heads was based upon their use with the patented handle. The payment is not so

intimately related to the importations as to be part of the dutiable value.

In *Rohner Gehrig & Co., Inc., supra*, the importer purchased an exhaust blower from a foreign manufacturer. In addition he paid a fee to the engineer for advice and a license to use the engineer's patented system in manufacturing a machine which incorporated the blower. The engineer, Dr. Buchi, was not related to the manufacturer of the blower but utilized the manufacturer's branch office as collecting agent for his fee. The importer contended the fee was optional and, therefore, not part of the export value. The Government contended the fee was not optional and this was evidenced by the fact the manufacturer of the blower collected Dr. Buchi's fee. This contention is clearly indicated in the decision as follows:

> The Government contends that the dutiable export value is the manufacturer's invoice price plus $960.00 paid to the patentee of the aforesaid system for the *right to use* the blower, or a total of $3,152.00. [Italics quoted.]

We are of opinion that this contention is based on a false premise. The fee collected by the seller for Dr. Buchi was for the right to use Dr. Buchi's system for the production of a Diesel engine in the United States and not for the right to use the blower manufactured by Brown, Boveri & Co., Ltd. The importation did not consist of a Diesel engine manufactured under the patent issued to Dr. Buchi. It consisted of only a blower which was purchased for use in the manufacture of the engine. It is merely a material or a part to be used in the construction of the engine. It is obvious that the Buchi system is not a part of the supercharging blower sold by Brown, Boveri & Co., Ltd. While the Buchi system requires a supercharging blower to be operative, the Brown-Boveri blower is not necessary to the system. Any supercharging blower would do if it produced the proper volume of air pressure.

Based upon the foregoing the court is of the opinion the royalty paid to Nippon is not dutiable. The royalty on the brush

heads was a sum paid for a bona fide right obtained from the exporter which is in addition to and separate from the purchase price of the involved merchandise. This payment was for the exclusive right to manufacture and sell Miracle Brushes in the United States. It was a valuable right granted by the manufacturer to an unrelated purchaser for a fee paid in addition to the price of the brush heads.

The importation did not consist of a complete Miracle Brush manufactured under the patent but only the brush head. It is merely a part to be used in the construction of a complete brush. The patented rotating handle is not part of the brush head sold by Nippon. Indicative of the fact that the royalty is tied to the brush handle, which was the patented item, are the Letters Patent for United States Patent No. 3421171 and the opinion of patent counsel dated July 7, 1972 attached to the moving papers. While the patented handle requires a brush head to be operative, the Nippon Seal brush head is not necessary for that purpose. Any brush head would do. Additionally, it is not disputed that the contractual arrangements were arrived at through arms length negotiations. Under these circumstances it is the opinion of the court that the royalty is not part of the dutiable value.

Accordingly, plaintiff's motion for summary judgment is granted.

Judgment will be entered accordingly.