The UNITED STATES, Appellant,

v.

IMPERIAL PRODUCTS, INC., Appellee.

Appeal No. 77-9.

United States Court of Customs
and Patent Appeals.

Feb. 9, 1978.

Rehearing Denied April 27, 1978.

Barbara Allen Babcock, Asst. Atty. Gen., David M. Cohen, Chief, Customs Section, Washington, D.C., William F. Atkin, New York, N.Y., for the United States.

Stein, Shostak, Shostak & O'Hara, Inc., Los Angeles, Cal., attorneys of record, for appellee; Marjorie M. Shostak, Los Angeles, Cal., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

The United States appeals from the judgment of the Customs Court which granted appellee's motion for summary judgment, 77 Cust.Ct. 66, C.D. 4672, 425 F.Supp. 852 (1976). We affirm.

The imported merchandise consists of cloth brush heads which were manufactured in Japan by Nippon Seal Co., Ltd. (Nippon) and purchased by appellee for distribution in the United States. After importation, these brush heads were used by appellee for manufacturing two types of brushes: the Mini-Miracle Brush, which has a fixed, non-rotating handle, and the Miracle Brush, which has a rotating handle. The Miracle Brush is disclosed and claimed in U.S. Patent No. 3,421,171, owned by Nippon, and the claims therein are limited to the combination of cloth brush head and rotating handle, meaning that the handle, which carries the brush head, is rotatable with relation to the head.

The license and right to manufacture and sell the Miracle Brush on an exclusive basis in the United States were acquired by appellee in a license agreement between Nippon and appellee. During the period of the importations at bar, the agreement provides that a royalty of 6 cents per unit is payable on approximately one-third of the imported brush heads, since approximately one-third of the heads are used in the patented brush. The agreement further provides, inter alia, that appellee guarantees to purchase from Nippon a large quantity of brush heads, viz., from two million two hundred thousand (2,200,000) to three million (3,000,000) units per year.

The parties agree that the correct basis of valuation is export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 19 U.S.C. § 1401a(b), which reads:

(b) *Export value.*—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is *freely sold or, in the absence of sales, offered for sale* in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States. [Emphasis added.]

Section 402(f), 19 U.S.C. § 1401a(f), provides in pertinent part:

(f) *Definitions.*—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered

(A) to all purchasers at wholesale,
* * *.

The cloth brush heads covered by this appeal were appraised on the basis of export value at the invoice value of 12 cents per unit, f. o. b. port, plus 6 cents per unit royalty, net packed. Appellee challenged the inclusion of the royalty in the appraisement and claimed 12 cents per unit, f. o. b. port, net packed, without the inclusion of the royalty.

### The Customs Court

In granting appellee's motion for summary judgment, the Customs Court emphasized that the appraisement is separable, as agreed by both parties. The term "separable appraisement" and application of the so-called "separability rule" were both succinctly explained in *United States v. Supreme Merchandise Co.*, 48 Cust.Ct. 714, 716–17, A.R.D. 145 (1962):

If ex-factory prices and other charges are separately stated on the invoices and the appraiser's finding of value is expressed in terms of the invoice unit prices plus the questioned charges, the appraisement is deemed to be separable. *United States v. Dan Brechner et al.*, 38 Cust.Ct. 719, A.R.D. 71; *United States v. Gitkin Co.*, supra; *Valley Knitting Co. Inc., et al. v. United States*, 44 Cust.Ct. 599, Reap.Dec. 9627. Under the rule expressed in *United States v. Fritzsche Bros., Inc.*, 35 C.C.P.A. (Customs) 60, C.A.D. 371, a party to reappraisement proceeding may challenge one or more of the elements entering into an appraisement, while relying upon the presumption of correctness of the appraiser's return as to all other elements, whenever the challenged items do not disturb the effect of the remainder of the appraisement. Such is the case in the instance of an appraisement of ex-factory-plus-charges value, and the charges may be disputed without the necessity of proof that the ex-factory prices comply with the statutory definition of export value. *United States v. Dan Brechner et al., supra.*

Here, the Customs Court said that under the doctrine of separable appraisement appellee may challenge one element entering into the appraisement (6 cents per unit royalty), while relying entirely upon the presumption of correctness of the appraiser's return with respect to the other element (12 cents per unit invoice value). The court permitted appellee to rest on a conclusive presumption that the appraiser's valuation of 12 cents per unit invoice value was correct.

The Customs Court went on to find that, under the circumstances of this case, the 6-cent royalty was not part of dutiable value. It held the royalty on the brush heads was a sum paid for a bona fide right obtained from Nippon in addition to and separate from the purchase price of the merchandise. This payment was for the exclusive right to manufacture and sell Miracle Brushes in

the United States. It was a valuable right granted by Nippon to an unrelated purchaser for a fee paid in addition to the price of the brush heads. The importation did not consist of complete Miracle Brushes, but only cloth brush heads.

In sum, the Customs Court found that: (1) the royalty of 6 cents per unit was not part of dutiable value, and (2) appellee could rely on a conclusive presumption that the appraiser's valuation of 12 cents per unit invoice value was correct. Hence, the Customs Court concluded that the invoice value of 12 cents per unit, f. o. b. port, net packed, was the correct export value.

### The Arguments

While appellant agrees that the appraisement is separable, it urges, nevertheless, that the Customs Court applied an incorrect burden of proof in this case. According to appellant, the doctrine of separability does not relieve appellee of the burden of establishing that the imported merchandise was freely sold or offered for sale to all purchasers at prices which did not include the disputed royalty fees. That is, as a condition precedent to applying the separability rule in export value appraisements, appellee must demonstrate that the merchandise was freely sold or offered for sale to all purchasers at prices which did not include the disputed charges. Appellant argues

that the Customs Court erroneously rejected the application of this condition precedent. It contends that only when appellee has made this showing will the separability rule give rise to a presumption that the price which the appraiser found (12 cents per unit) is the price at which the merchandise is freely sold or offered to all. Hence, genuine issues of material fact exist which are subject to trial. As precedent for its position, appellant relies chiefly on *United States v. Pan American Import Corp.*, 428 F.2d 848, 57 CCPA 134, C.A.D. 993 (1970), and cases cited therein.

Appellee argues that since the appraisement is separable, it is entitled to rely on the presumption of correctness of the appraisement at invoice unit values. According to appellee, it has established that the royalty which it paid was not part of the purchase price of the imported brush heads, thereby fully meeting its burden of proof. Appellee points to evidence attached to its motion for summary judgment which indicates that the purchase price and the royalty were separate considerations.[1] Appellee urges that a separate royalty was paid from appellee to Nippon for the exclusive right to manufacture and sell Miracle Brushes in the United States. Appellant failed to submit any supporting evidence to counter appellee's motion for summary judgment, as by filing affidavits under Rule 8.2 of the Customs Court.[2] Finally, appellee argues

---

1. This evidence includes: (1) the affidavit of Marc J. Dahlquist with attachment, dated July 28, 1975; (2) the affidavit of Marjorie M. Shostak with attachments, dated July 30, 1975; (3) the license agreement of April 11, 1969, modified by memorandum dated April 13, 1970; (4) U.S. Patent No. 3,421,171, issued Jan. 14, 1969; (5) the October 10, 1972, statement of net royalties paid to Nippon Seal and withholding tax paid to IRS; and (6) the letter of July 19, 1974, with attachment, from Majorie M. Shostak to Irving W. Smith, Jr., of the United States Customs Service.

2. Rule 8.2, dealing with summary judgment, reads in pertinent part:

    (f) *Form of Affidavits; Further Testimony*: Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters

stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith, except that all papers and documents which are part of the official record of the action may be referred to in an affidavit without attaching copies, and shall be considered by the court without additional certification. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him.

    (g) *When Affidavits are Unavailable*: Should it appear from the affidavit of a party

that the cases cited by appellant, to support its position that appellee carries an additional burden of proof, all involved inland freight and/or related charges as opposed to royalty fees. While appellant relies on *Pan American*, supra, appellee contends that that case applies only to packing and inland charges, and was so limited in *United States v. H. M. Young Associates*, 505 F.2d 721, 62 CCPA 20, C.A.D. 1138 (1974).

### Issue

The broad question is what is the burden of proof in a case involving the doctrine of separable appraisement. More specifically, did the Customs Court, in granting summary judgment for appellee, err in concluding that the doctrine of separable appraisement relieved appellee from the burden of proving that the imported merchandise was freely sold or offered for sale to all purchasers at prices which did not include the disputed royalty?

### OPINION

We do not agree with appellant's contention that appellee must demonstrate, as a condition precedent to applying the separability rule in export value appraisements, that the merchandise was freely sold or offered for sale to all purchasers at prices which did not include the disputed royalty. Such an argument assumes that the *only* way to show the royalty is *not* properly part of the price charged by the manufacturer is to prove that the manufacturer freely sold or offered the merchandise for sale to others without charging the royalty.

The assumption is misplaced. Another way to show the royalty is not part of the selling or offering price is the way that was followed here—to show by evidence what the royalty *is* for, namely, a manufacturing license under a patent to make the complete brush in the United States. Because the royalty was charged for the right to make and sell under the patent rather than for merchandise, it was not part of the selling price. The basing of the royalty on one-third of the heads purchased was simply a way of computing the royalty for the license.

Since appellee has shown that the royalty payment was for manufacturing rights and not for purchased heads, it has carried its burden. Nothing else need be proved. *United States v. Bud Berman Sportswear*, 55 CCPA 28, C.A.D. 929 (1967); *United States v. Chadwick-Miller Importers, Inc.*, 54 CCPA 93, C.A.D. 914 (1967); *United States v. Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371 (1947).

Appellant relies upon this court's decision in the 1970 *Pan American* case, supra. That states that the importer must establish that such or similar merchandise was in fact offered to all purchasers on an ex-factory basis *before* the separability rule gives rise to the presumption that the ex-factory price determined by the appraiser was the price at which the merchandise was freely sold or offered to all. 428 F.2d at 852–53, 57 CCPA at 138–39.

Acceptance of the Government's position would make a mockery of its admission that the appraisement is separable. If the separability rule has any substance, the importer must be allowed to rely on the presumption that everything found under the statute was correct except the single item challenged, which here was the inclusion of the royalty. The importer has shown that it was not part of the price and why and what it was for.

Perhaps, as the Government argues, this case cannot be distinguished from *Pan American*. However, to apply that case here would be wholly inconsistent with the *H. M. Young Associates* case, supra, decided four years after *Pan American*, and with what we said there about the separability rule, its nature, purposes, and sound basis in public policy. Taken as a whole, *Young* left little, if any, of *Pan American* standing. In

opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may deny the motion for summary judgment, or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, or may make such other order as is just.

the light of the opinion in *Young*, we conclude that *Pan American* was wrongly decided, and now expressly overrule it. A viable *Pan American* would reduce the presumption of the appraiser's valuation to the correctness of the money figure itself and would require an importer to prove the elements of 19 U.S.C. § 1401a(b) though he challenges only a single added-on item.

The judgment of the Customs Court is *affirmed.*

LANE, Judge, dissenting, with whom MILLER, Judge, joins.

With all due respect, the majority opinion ignores the definition of export value set forth in sections 402(b) and 402(f)(1)(A) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. Merely because the appraiser's finding of value is expressed separately (12 cents per unit invoice price plus 6 cents per unit royalty fee), it cannot be presumed that 12 cents per unit is the statutorily prescribed export value, because such presumption does not logically flow from the appraisement. When an appraising official determines that export value is the sum of two figures, only the total is presumptively the price at which the merchandise is freely sold or offered for sale to all purchasers. See 28 U.S.C. § 2635, as amended by the Customs Courts Act of 1970:

> In any matter in the Customs Court:
> (a) The decision of the Secretary of the Treasury, or his delegate, is presumed to be correct. The burden to prove otherwise shall rest upon the party challenging a decision.

Since the appraiser did not accept 12 cents per unit as the proper export value, but instead made an addition to it in determining the correct value, it follows that 12 cents per unit *cannot* be presumed correct.

Nevertheless, under a judicially developed doctrine which sets the quantum of proof required in order to establish export value in cases involving separable appraisement, importers have been permitted to prove that only a portion of the total appraisement is the correct export value without proving every element thereof. This doctrine is typified by *United States v. Pan American Import Corp.*, 428 F.2d 848, 57 CCPA 134, C.A.D. 993 (1970). In *Pan American*, the appraiser determined appraisement by adding 1.9 percent for packing and inland charges (inland freight, insurance, hauling, lighterage, and storage) to the invoice price of the imported merchandise. Importer claimed that the invoice unit price alone represented export value and that the packing and inland charges were non-dutiable. In support of this claim, importer submitted two affidavits, which were summarized by the trial judge as follows:

> Plaintiffs' exhibit 1 was signed by Torayuki Fukunaga and states that it was to certify that Arrow International, Ltd., of Kobe, Japan, a trading company purchased from Tsuda Clock Mfg. Co., Ltd., of Nagoya, Japan, for the account of Pan American Import Corp., the merchandise listed on the schedule attached. It is further stated that Arrow purchased said merchandise from the manufacturer at the ex-factory prices, net packed, shown on the invoices herein, and that the inland freight, insurance, hauling, lighterage, storage, and other petty charges were paid by Arrow, for the account of Pan American and not to the manufacturer. The schedule attached is a statement by Tsuda Clock Mfg. Co., Ltd., listing shipments made by Arrow of Tsuda's No. B–268 spinning reels and stating that the ex-factory prices included packaging charges.

> Plaintiffs' exhibit 2 is an affidavit executed by H. Tsuda, president of K. K. Tsuda Tokei Seizoho (apparently the same concern as Tsuda Clock Mfg. Co., Ltd.). It states:

> During the period of September, 1962 through March, 1963 my company sold and delivered to Arrow International Ltd., of Kobe, Japan, certain fishing reels in accordance with the confirmation of order, a copy of which is annexed hereto, marked "A", and in accordance with the statement annexed hereto, marked "B".

The unit price was Y313.20 each, as per said confirmation, which price was the ex-factory price for said merchandise, and included all packing charges at our factory. During this same period of time we offered similar merchandise for sale to all persons who wished to buy the same at the same prices.

Our factory, at Nagoya, Japan, is a principal market in Japan for the sale of such merchandise for exportation to the United States. During this period we never sold such or similar merchandise on an F.O.B. port of shipment, Japan, basis. No inland freight charges, insurance premiums, hauling and lighterage charges, and storage or other charges were charged by us in addition to the above. [*Pan American Import Corp. v. United States*, 58 Cust.Ct. 608, 609–10, R.D. 11269 (1967).]

While these affidavits were persuasive evidence that the packing and inland charges were not part of the purchase price of the imported merchandise, nevertheless, this court held that importer carried an additional burden of proof, viz., to establish that the merchandise was freely sold or offered for sale to all purchasers at prices which did not include the disputed charges. Provided this showing was made, the separability rule would give rise to a presumption that the invoice unit *price*, which the appraiser found, was *the* price at which the merchandise was freely sold or offered to all. In sum, even though persuasive evidence of record tended to prove that the packing and inland charges were not part of the purchase price of the imported merchandise, nevertheless this court required additional evidence before applying the separability rule in the context of an export value appraisement.

There is no rational distinction between *Pan American* and the case at bar, and the majority does not attempt to draw one. While *Pan American* involved disputed packing and inland charges, the present case involves a disputed royalty fee. How-

ever, the *bona fides* of packing and inland charges and of royalty fees depends on whether such or similar merchandise is freely sold or offered for sale to all without these charges.[1] Whether the disputed charges are packing and inland charges or royalty fees, an additional quantum of proof is required *before* the importer can rely on a presumption of correctness of the appraiser's return with respect to invoice unit price. Were it not for the majority's abrupt departure from the *Pan American* doctrine, it would control the present appeal, as I believe it should, and appellee would carry a burden of establishing that the imported merchandise was freely sold or offered for sale to all purchasers at prices which did not include the disputed royalty fees. This burden was not satisfied; indeed, appellee argues, and the majority wrongly concludes, that it does not have the burden.

The *Pan American* case, of course, does not stand alone in this area of the law. It expressly follows *United States v. Bud Berman Sportswear Inc.*, 55 CCPA 28, C.A.D. 929 (1967) and *United States v. Chadwick-Miller Importers, Inc.*, 54 CCPA 93, C.A.D. 914 (1967). It is followed, in turn, by *United States v. Vicki Enterprises, Inc.*, 496 F.2d 1403, 61 CCPA 75, C.A.D. 1125 (1974). In overruling *Pan American*, the majority makes it appear as though that case is an aberration when, in fact, *Pan American* is consistent with a recent line of cases from this court involving separable appraisement and export value. Apparently, the entire line of cases is, *sub silentio*, being overruled in derogation of the principle of *stare decisis*.

Acceptance of appellee's position makes a mockery of its admission that the correct basis of valuation is export value. The evidence in this appeal relates to a transaction between appellee and Nippon. Appellee does not tell us whether such or similar cloth brush heads are sold or offered, for exportation to the United States, to any other purchaser. Such sales or offers, if

---

1. See *United States v. H. M. Young Associates*, 505 F.2d 721, 725, 62 CCPA 20, 24, C.A.D. 1138 (1974) and *Erb & Gray Scientific, Inc. v. United States*, 53 CCPA 46, C.A.D. 875 (1966).

they exist, would be relevant in determining export value. See sections 402(b) and 402(f)(1)(A) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, in the majority opinion, supra. This record is clearly open to the interpretation that there are other purchasers of cloth brush heads in the United States, since the royalty fee paid by appellee to Nippon was for the exclusive right to manufacture and sell Miracle Brushes. Other purchasers may buy cloth brush heads and use them in non-patented brushes. However, even assuming arguendo that there are no other purchasers, it would be unrealistic to assume blindly that a single invoice price, i. e., the appraised price of 12 cents per unit, accords with the price at which the merchandise is freely sold or offered for sale. I note that in Article 11 of the license agreement of record, appellee guaranteed to purchase from Nippon between two million two hundred thousand (2,200,000) and three million (3,000,000) units of cloth brush heads per year. Certainly, it cannot be assumed that the invoice price would have been 12 cents per unit had this obligation of appellee been omitted from the license agreement. Compare *United States v. Tide Water Oil Co.*, 19 CCPA 392, 398–99, T.D. 45554 (1932).[2] In this regard the following passage from R. Sturm, A Manual of Customs Law 39 (1974) is germane:

> Dutiable value must be found in accordance with the statutes in effect at the time of importation. It is not necessarily the price paid by the particular importer since the price paid may vary from importer to importer as a result of bargaining ability or other factors. Tariff statutes are directed toward finding the price that a willing buyer would pay and a willing seller accept in an uncontrolled market open to all prospective purchasers. *United States v. Alfred Kohlberg, Inc.*, 2 Cust.Ct. 849, Reap.Dec. 4526 (1939), aff'd 37 CCPA 223, C.A.D. 88 (1940); *Superior Merchandise Company v.*

*United States*, 54 Cust.Ct. 781, A.R.D. 185 (1965).

Appellee relies heavily on *H. M. Young Associates*, supra, as narrowly restricting *Pan American* to fact situations where the disputed charges are packing and inland charges. I disagree. As I have already discussed, there is no rational distinction between *Pan American* and the case at bar, which involves a disputed royalty fee. While this court did say in *H. M. Young Associates* that "[o]ther 'export value' cases [other than those involving inland charges] may find the separability rule working to relieve the plaintiff from any requirement to prove that the merchandise was freely sold or offered to all at ex-factory prices," this language was dictum and hedged with "may." The separability rule stated in *Pan American* should control the case at bar.

In *H. M. Young Associates* appraisement was made under constructed value, not export value, and the parties therein agreed that constructed value was the proper basis for appraisal. This court disagreed with the Government's position therein, since the Government sought the effective destruction of the separability rule, i. e., the Government would have required an importer to prove all elements of constructed value in every case. In the present appeal, however, appellant asks only that we apply the separability rule as it has been applied previously in the context of export value appraisements. As the majority opinion indicates, *H. M. Young Associates* discusses the separability rule, its nature, purposes, and sound basis in public policy. Such discussion, however, is made in the context of a constructed value appraisement and, I believe, is logically restricted thereto.

In granting summary judgment for appellee, the Customs Court erred in concluding that the doctrine of separable appraisement relieved appellee from the burden of proving that the imported merchandise was freely sold or offered for sale to all purchas-

---

2. While *Tide Water* involved export value as defined in section 402(d) of the Tariff Act of 1930, which focused on the price at which merchandise is freely offered for sale to all purchasers, there is no significant difference in the present statute. *F. B. Vandergrift & Co. v. United States*, 410 F.2d 1259, 56 CCPA 105, C.A.D. 962 (1969).

ers at prices which did not include the disputed royalty fees. While appellee's evidence tends to prove that the royalty fee which it paid was not part of the purchase price of the imported cloth brush heads, i. e., that inclusion of the royalty fee in the appraised value was wrong, this is not enough. Appellee must also satisfy its burden of proving that the claimed value is correct. However, appellee has not yet cleared the first hurdle which is necessary for application of the separability rule under the *Pan American* case in order to prove that the claimed value is correct. Accordingly, there remain genuine issues of material fact subject to trial. The judgment below should be reversed and the cause remanded for trial on the merits.